## GEORGE L. REYNOLDS *v.* CITY OF BURLINGTON.

*Sufficiency of Notice of Injury on Highway. Degree of Care and Prudence Necessary on part of Traveller.*

The notice of injury on a highway was that the injury was received on that part of the highway that lay between two certain dwelling houses, and at a point therein "north from and opposite" a certain brick-yard; and the designation of the insufficiency was of "a deep rut or hole in the travelled track," two hundred feet long, twelve inches deep, and from six to ten inches wide. The brick-yard was on the south side of the highway, with a frontage thereon of two hundred feet, and was in a lot having a frontage of four hundred and sixty-one feet, which was enclosed on the east and west sides. The rut in question was in the travelled track of the highway, and extended along the entire front of the brick-yard, and, at the place where the injury was received, was substantially of the width and depth stated in the notice. There were other ruts of less depth in the same locality, and other noticeable objects somewhat nearer the place of the accident than the two houses, which were six hundred and seventy-four feet apart, but the brick-yard was the most conspicuous object between the houses. The plaintiff was familiar with the highway and the different objects along its course. *Held,* that it did not appear that the notice did not point out and describe the place and cause of the accident with reasonable particularity and certainty.

The notice was, among other things, of the fracturing and breaking of four ribs, and of an injury to the lungs. The principal permanent injury complained of for which the plaintiff sought to recover was a thickening of the pleura and an adhesion thereof to the walls of the chest, the result of inflammation caused by the injury. There was evidence tending to show that on examination three days after the accident the pleura appeared to be injured, and that the inflammation was caused by the fracture of a rib. *Held,* that the notice was sufficiently particular to admit of recovery for the injury to the pleura.

The "ordinary care and prudence" that the traveller on a highway is bound to exercise with reference to insufficiencies thereof, are the care and prudence of a prudent and careful man. Thus: in case for injury on a highway, the court was requested to charge that plaintiff could not recover, if want of care on his part contributed to the injury. The court so charged, and charged also that the expression, ordinary care, excluded the idea of extraordinary care and the idea of carelessness; that the plaintiff was bound to exercise a mean degree of care, "that measure of care and attention . . . that persons of ordinary care, men generally, ordinary prudent men," exercise under similar circumstances; and that, if plaintiff "did what any ordinary man, any man of ordinary care and attention would have done," was "exercising such a measure of care as men ordinarily would have exercised," he had satisfied the rule. *Held,* that the charge failed to convey the true sense and force of the rule, and was therefore erroneous.

CASE for injury on a highway. Plea, general issue, and trial by jury, April Term, 1879, POWERS, J., presiding.

The notice of injury, which was received in evidence subject to such objection as might be made thereto in view of the facts to be shown, stated that the plaintiff received the injury in question on April 22, 1878, while travelling with his team on a highway in the city of Burlington, known as Winooski avenue, and proceeded, so far as material, as follows:

The place upon said highway where I received said injuries is in and upon that portion of said highway which lies between the dwelling houses of Joseph Dupau and John Dupau, and at a point in said portion of said highway northerly from and opposite the brick-yard of Francis Leclair. . . . The said portion of said highway where I received said injuries was at the time of receiving the same insufficient and out of repair, as aforesaid, by reason and in consequence of a deep rut or hole in the travelled track thereof 200 feet in length and twelve inches deep, and from six to ten inches in width, as near as I could ascertain. . . . The parts of my body injured as aforesaid are as follows, to wit : both legs, ankles and feet, spine, shoulders, ribs, collar bones, sternum, and lungs . . . The extent of the aforesaid injuries, as far as can be now ascertained, is as follows, to wit : the soft parts and ligaments of the legs and feet were and are contused, lacerated, and crushed ; four of my ribs upon my left side are and were fractured and broken, my collar bone of the left shoulder fractured, and the spine and sternum wrenched, bent, compressed and twisted, and a general severe concussion and shock to my whole system, the effect upon my health being to perfectly and completely prostrate and disable me, and confine me to my bed.

The plaintiff's evidence tended to prove that the brick-yard mentioned in the notice was situated on the south side of the highway on a lot which was owned and occupied by Francis Leclair and enclosed on the east and west by fences running at right angles with the highway ; that the entire lot had a frontage on the highway of four hundred and sixty-one feet, two hundred feet of which were the frontage of the brick-yard — that part of the entire lot that was levelled off and used for making brick, and on which were the kiln and machinery used therein ; that the distance between the dwelling houses mentioned in the notice was six hundred and seventy-four feet ; that the brick-yard was the most prominent object between them ; that the rut that caused the injury in question extended in the travelled part of the highway along the entire front of the brick-yard, and, at the place where the accident happened, which was opposite and north of the brick-

yard, was eleven and three-fourths inches deep and ten inches wide at the top ; that there was also another rut in the same part of the highway, " the mate " to the one referred to, of the same length, but of less depth ; that there was also another set of ruts in the same locality, four to six inches deep, but of unascertained length and width, that were made by carriages in " straddling " the rut complained of. It further appeared from the plaintiff's evidence that there was a house on the south side of the highway three rods nearer the place of the accident than the house of John Dupau ; that the barn of Joseph Dupau was several rods nearer the place of the accident than his house, and was on the border of the highway ; that there was a stone culvert running under the highway at a point much nearer the place of accident than either of the houses mentioned in the notice ; that there were three private roads leading from the highway into the brick-yard, also much nearer than the houses ; and that the plaintiff was frequently over the highway, and was familiar with it and with the different objects along its course.    It appeared that the principal permanent injury complained of was a thickening of the pleura or " lining membrane of the chest and lungs ", and an adhesion thereof to the lungs and walls of the chest, the result of inflammation caused by the injury in question, which restricted and impaired the action of the lungs, producing irritation, and a cough ; but it did not appear that there was any injury to the substance of the lungs themselves.    The plaintiff's evidence tended to show that on examination three days after the accident, it appeared that the pleura was injured.    Dr. Crampton, one of the medical men introduced by the plaintiff, testified that, in his opinion, the inflammation of the pleura was caused by the fracture of a rib.

The defendant, after the testimony was all in, requested the court to rule that the notice was insufficient, for that it did not designate the place or rut where the injury was received, with the requisite particularity.    The court refused so to do, found the facts relative thereto to be as " claimed by the plaintiff", and ruled that the notice was sufficient ; to which the defendant excepted.

The defendant requested the court to charge that on the evi-

dence, including the notice of injury, the plaintiff was not entitled to recover for any injury to the pleura ; but the court refused so to charge ; and to that refusal the defendant excepted.

The defendant also requested the court to charge that it must be found that the defect in the highway caused the accident; that no want of care on the plaintiff's part contributed to it; that if want of care on his part contributed, however slightly, he could not recover, even though the accident would have happened if his fault had not contributed to it ; that if the road was out of repair and unsafe for travel, and the plaintiff knew it, he was bound to exercise greater care and prudence than otherwise would have been required of him. The court complied with those requests, but, in charging as to the degree of care the plaintiff was bound to use, made use of the following language :

" Was the plaintiff, on the occasion of his passing over this road on the 22d day of April, 1878, in the exercise of ordinary care and prudence ? This expression, ordinary care, as you notice, excludes the idea of extraordinary care, and excludes the idea of carelessness. The traveller is not bound to exercise the most vigilant care that the most vigilant man would have exercised under similar circumstances. The law does not require that extreme degree of diligence on his part, nor does it suffer him to be guilty of carelessness, the other extreme ; but it is a mean degree of care. It is that measure of care and attention to his team, to his mode of driving, to the road itself, that persons of ordinary care, men generally, ordinary prudent men would and do exercise under similar circumstances. That is all the diligence that the law requires of the traveller in answering this part of the case. Now, on this occasion, applying that rule to the plaintiff, . . . was he exercising such attention, such care in respect to his driving, . . . as men generally, under the same circumstances, would have exercised ? If he did on that occasion what any ordinary man,—not what a careless man, not what a man of extraordinary caution would do, but if he did what any man of ordinary care and attention would have done under the same circumstances, then he is not guilty of any want of ordinary care that deprives him of the right to recover. . . .

Would a man of ordinary care have done as he did, riding as he was ? . . . This, gentlemen, is wholly a question for you, . . . whether there is anything seen or disclosed . . . that is out of the usual order of ordinary care as observed by men generally. . . . If you find he was exercising such a measure of care as men ordinarily, under such circumstances, would have exercised, why, then that part of the case is made out by the plaintiff."

To that part of the charge wherein the jury were instructed as to the care required and as to the meaning of the term, " ordinary care," therein used, the defendant excepted.

*M. R. Tyler* and *L. L. Lawrence*, for the defendant.

The notice was insufficient in that it did not point as directly and plainly to the place as was reasonably practicable, and did not designate the place in the rut. *Low* v. *Fairfield*, 46 Vt. 425, 433 ; *Babcock* v. *Guilford*, 47 Vt. 519, 523 ; *Reed* v. *Calais*, 48 Vt. 7 ; *Bean* v. *Concord*, 48 Vt. 30 ; *Purrington* v. *Warren*, 49 Vt. 19. The matter is revisable in this court. *Purrington* v. *Warren, supra.*

The notice was not such as to entitle the plaintiff to recover for the injury to the pleura. An injury to one part of the body may from sympathy or juxtaposition affect another part, but it is not correct to say that the part so affected was injured ; and if anything is claimed from such condition, the real injury and its effect on the adjacent parts should be stated in the notice.

The charge as to the care and prudence required was erroneous. The rule recognized by the civil law writers, indorsed by the English judges, and established as law in this State is, that the plaintiff in such cases must have conducted himself like a prudent man. It was the duty of the court, if it discussed the meaning of terms, to define the degree of care requisite, in accordance with the law. Although the exception was only to the charge given, it involved non-compliance with the request ; and the charge was not a compliance. Story Bailments, s. 13 ; REDFIELD, C. J., in *Briggs* v. *Taylor*, 28 Vt. 180 ; *Folsom* v. *Underhill*, 36 Vt. 580 ; *Duff* v. *Budd*, 3 Brod. & B. 177 ; *Riley* v. *Horne*, 5 Bing. 217 ; *Batson*

v. *Donovan*, 5 B. & Ald. 32; *Wyld* v. *Pickford*, 8 M. & W. 442; *Hunter* v. *Debbin*, 2 Q. B. 644; *Wilson* v. *Brett*, 11 M. & W. 113; *Austin* v. *Manchester Railroad*, 11 Eng. L. & Eq. 513; *Steamboat New World* v. *King*, 16 How. 469, 474.

*R. H. Start*, *W. L. Dunlap*, and *E. J. Phelps*, for the plaintiff.

The court found the facts as to the notice to be as the plaintiff claimed on all the evidence, and held the notice sufficient. It does not appear how the plaintiff claimed them to be, so there is nothing on which to revise the decision. But, if it be said the finding was of facts such as the evidence tended to show, and the court held the notice sufficient on those facts, the only question here is, whether the court erred in so deciding, for the finding is conclusive as to questions of fact. *Pomfret* v. *Barnard*, 44 Vt. 527; *Ranney* v. *Sheffield*, 49 Vt. 191. The notice was sufficiently definite. The rut was co-extensive with the frontage of the brick-yard, and was equally bad throughout the whole distance. The brick-yard was the most conspicuous object in the vicinity, and the most natural for reference. The question is not whether the notice might have been more definite, but whether it was definite to a reasonable degree. *Ranney* v. *Sheffield, supra.*

The court properly refused to comply with the defendant's request as to the injury to the pleura. The injury thereto was produced by inflammation caused by the injuries inflicted on the happening of the accident. It would, therefore, have been error to comply, for the plaintiff was entitled to recover for injury resulting from inflammation. But it may be said that the object of the request was to raise the question whether, as the pleura was not specified in the notice, and as there was evidence that the pleura was found to be injured within three days of the accident, and to have been injured by reason of the injury to the rib, the plaintiff was entitled to recover at all therefor, whatever caused it. But the witness did not say whether the injury was the direct result of the breaking of the rib, or the result of inflammation. If the injury was caused wholly or partly by inflammation, the plaintiff could recover, without question. Hence, the request was for too much, and on that ground was rightly refused. *Vaughan* v. *Porter*, 16

39

Vt. 266; *Underwood* v. *Hart*, 23 Vt. 120; *Bates* v. *Cilley*, 47 Vt. 1. But, on proper construction, the notice covered that injury, whether the direct result of the accident, or the result of subsequent inflammation. The lungs were alleged to be injured, and the pleura is the covering of the lungs.

The charge as to the measure of care, and defining the term, ordinary care, was correct. The definition follows that given by ISHAM, J., in *Hyde* v. *Jamaica*, 27 Vt. 443, and is in accordance with that adopted by the courts in cases of this class. See *Folsom* v. *Underhill*, 36 Vt. 580; Angell & D. Highways, s. 290; 2 Hilliard Torts, 392; Shearm. & Redf. Negl. s. 20; *Farrar* v. *Green*, 32 Me. 574; *Ernst* v. *Hudson River Railroad*, 35 N. Y. 9, 27; *Brown* v. *Lynn*, 31 Pa. St. 510; *State* v. *Manchester & Lawrence Railroad*, 52 N. H. 528; *Cleaveland, Columbus & Cincinnati Railroad Co.* v. *Terry*, 8 Ohio St. 570, 581. It was correct as to the measure of care. The plaintiff was bound to the exercise of ordinary care as defined. *Kelsey* v. *Glover*, 15 Vt. 708; *Allen* v. *Hancock*, 16 Vt. 230; *Hodge* v. *Bennington*, 43 Vt. 450, 459; *Fletcher* v. *Barnet*, 43 Vt. 192; *Walker* v. *Westfield*, 39 Vt. 246; *Fallon* v. *Boston*, 3 Allen, 39; *Smith* v. *Lowell*, 6 Allen, 39; *Butterfield* v. *Forrester*, 11 East, 60; *Beers* v. *Housatonic Railroad Co.* 19 Conn. 566. The term, ordinary care, is used in our courts as synonymous with the term, reasonable care, as used by the courts of England. *Fletcher* v. *Boston & Maine Railroad*, 1 Allen, 9.

The opinion of the court was delivered by

BARRETT, J. I. We discover no error in law in the holding by the County Court that the notice of the place and cause of the accident was sufficient. The brick-yard was that which is described as such in the evidence with a front of two hundred feet. That being so, it does not appear that the manner of designating the place along the two hundred feet of dangerous rut at which the accident occurred, was not reasonably definite. The rut was of the same character throughout—dangerous all the way—with nothing collateral to it, distinguishing one place in it from another. The particular place was indicated by giving the depth and width,

and characterizing it as a hole. The evidence justified that des-
ignation of the place, whether the whole length of the rut was of
the same depth and width, or not. The city had every advantage
in respect to the condition of the road that it could have had if
the point had been fixed precisely by a stake or other monument.
Wherever the accident might have occurred on said two hundred
feet, there the same defect of the highway existed as at the place
where the evidence shows that it did in fact occur. We do not
relax on any view in former cases as to the requirements of the
statute of the notice in question. We only say and hold in this
case, that it does not appear that the notice does not point to and
describe the place and the cause of the accident with reasonable
particularity and certainty.

II. It seems to us that the verbose specification of the places
and things injured, ought to entitle the plaintiff to be compensated
for the consequences to his *pleura*, unless we adopt the principle
of the maxim, " *inclusio unius exclusio alterius* ", and parody it,
" *inclusio multorum exclusio reliquorum.*" Dr. Crampton attrib-
utes the inflammation and adhesions of the *pleura* to the breaking
of the ribs. That injury to the ribs is named in the notice. The
resulting consequences to other occult and unknown organs may
not have been within the knowledge and skill of the plaintiff, or
of his counsel, at the time the injury was inflicted and the notice
drawn. Whatever damaging consequences resulted from the
breaking of the ribs may properly be proved, though the patho-
logical process by which that damage comes to pass, be not speci-
fied in the notice.

III. The exception to the charge of the court is maintained.
The idea of the kind and degree of care which the law requires
on the part of the plaintiff in this case is propounded, developed,
and illustrated in *Briggs* v. *Taylor*, 28 Vt. 180 ; and how that
idea may be expressed with adequate amplitude and precision is
very well exemplified by Chief Justice REDFIELD in that case.
Such kind and degree of care, as thus expressed and illustrated in
its application to the subject of that case, is equally requisite on

the part of the plaintiff in this case. This is fully asserted and shown in *Folsom* v. *Underhill*, 36 Vt. 580. The exposition of this subject in *Briggs* v. *Taylor* has been regarded by the Supreme Court ever since as the true one, and to have done excellent service towards giving a definiteness and practical usefulness to the legal idea of the care to be exercised in such cases. In no case since that decision has the Supreme Court designed to modify the rule as there stated, illustrated, and established. As before said, it was asserted and applied in *Folsom* v. *Underhill*, and for failure of the County Court to come up to it in the charge, the judgment was reversed. We now hold the case last named to be authoritative in that respect.

We hold in this case that the charge failed to convey to the jury the true sense and force of that rule, and that, instead thereof, the subject was presented in manner and effect such as were held not to be answerable to the requirement of the law. The entire exposition by the learned judge of "ordinary care", "ordinary prudence", "ordinary prudent men", was calculated to leave an impression upon the jury of a very different kind and degree of prudence from that which the language and expositions of Judges REDFIELD and KELLOGG would make. The exposition in this case followed the compliance by the court with the requests of the defendant, and instructed the jury as to the sense in which the care and prudence spoken of in said requests were to be understood and regarded by them. Such exposition would naturally abate from the point and force which a naked compliance with those requests might otherwise have had. The care and prudence which the law regards as "ordinary" is such as *prudent* men are accustomed to exercise on like occasions,—not such "as men generally", not such as "any man of ordinary care and attention", not "what a man of ordinary care would have done, riding as plaintiff was", &c., not "the usual order of ordinary care observed by men generally." A man of *ordinary* care, of *ordinary* prudence, as expressed in common parlance, is not regarded by the law as being to the common understanding the same as characterized by the expression, "a prudent man", "prudent men."

Though special request was not made for charge explaining the measure of care and giving the expression of it, still the subject of that measure was distinctly presented, and if the court undertook to give such explanation and expression, the requirement of the law in that behalf should have been complied with.

For the failure in the charge in this respect, judgment is reversed and cause remanded.