O. G. FASSETT v. TOWN OF ROXBURY.*

. *Highway.    Notice.    Negligence.*

The notice set forth that the plaintiff was injured while travelling on a highway "leading from the west, or depot village " in the town of R. to the depot village in the town of N.; "when near the railroad crossing which .is between the dwelling house of Azro Simonds in said town of Roxbury, and the dwe'ling house of." Latham in said town, "and on the easterly side of said railroad crossing, and between the said dwelling house of the said Latham, and about five or six rods from said rai'road crossing"; that his horse and wagon "were thrown off the bank on the easterly side" of the highway; that there was a steep bank on the "easterly side of the highway at that point " not "protected by any railing or other guard "; that the highway was insufficient because there was no railing; and that "I" * * * was "severe'y injured in my spine near my shoulders so that I have had no use of my arms," and " was otherwise injured in and about my back and spine." *Held*,

1. The notice was sufficient as to the p'ace of the accident;
2. And, as to the bodily injuries.
3. The charge of the court should be taken as a whole.
4. The question of contribut·ry negligence, as a general rule, cannot resolve itself into one of law, but must be submitted to the jury, with instructions.
5. The terms, "ordinary and common prudence," "ordinary care and prudence," explained.

CASE for injury on a highway.    Plea, general issue ; and trial by jury, September Term, 1881, REDFIELD, J., presiding. Verdict for the plaintiff.

The notice as to the place of accident and injuries was :

" An open, public highway in said town of Roxbury, leading from the west, or depot village in said town of Roxbury, to the depot village in the town of Northfield, and that when near the railroad crossing which is between the dwelling house of Azro Simonds in said town of Roxbury, and the dwelling house of Marshall Latham in said town of Roxbury, and on the easterly side of the said railroad crossing, and between the said dwelling house of the said Marshall Latham and about five or six rods from said railroad crossing, my horse and wagon were thrown off the bank on the easterly side of said highway; said highway being insufficient and out of repair at that point, in that there was a steep bank on the easterly side of said highway at that point; and the said highway at

that point was not protected by any railing or other guard to prevent teams from going over the said bank; and by said accident, solely caused by the insufficiency of said highway, my wagon was broken and injured, both of the shafts were broken, the cross bar was broken, the dash was broken over, and the spokes were broken out of both wheels of said wagon, and the wagon was otherwise scratched and marred, and I was thrown from my wagon, and severely injured in my spine near my shoulders so that I have had no use of my arms since that time, but have been, and am now, confined to my bed, entirely helpless, and I was otherwise injured in and about my back and spine, and internally, and I was so severely injured that the clothes had to be cut from my back."

The defendant's counsel requested the court to charge the jury :

" If the plaintiff knew he was approaching a railroad track, and did not at a safe distance therefrom, before crossing the same, use all reasonable means to ascertain whether a train was approaching ; and having found such train so approaching, did not stop or turn his horse around so as to avoid such approaching train ; and if his neglect to so ascertain and stop and turn his horse around contributed in any degree to the accident, the plaintiff cannot recover."

The facts and charge of the court are sufficiently stated in the opinion.

*Dillingham, Pitkin,* and *Senter,* for the plaintiff.

*Stanton, Plumley, Heath & Carleton,* for the defendant.

The opinion of the court was delivered by

ROWELL, J.   Defendant contends that the notice does not designate the place of injury with sufficient certainty, nor sufficiently describe the bodily injuries for which recovery is sought.   It is claimed that the notice locates the place of injury *between* a point about five or six rods easterly of the railroad crossing and Latham's house, thus ranging a distance of some thirty-four or thirty-five rods, it being about forty rods from the crossing to Latham's house.   We think there is no great ambiguity in the notice in this respect, and that it is not very probable that the selectmen were unable to determine therefrom with reasonable certainty the exact place where plaintiff claimed to have been injured.   If we interpolate the words, *there and,* after the word

" between," in the notice, all ambiguity will be removed, and the place located five or six rods east of the crossing, where the accident in fact happened. But if we construe this notice according to the defendant's contention, it is then sufficient, on the authority of *Reynolds* v. *Burlington*, 52 Vt. 300. The bank commences at the crossing and extends northerly, along the easterly side of the highway, for a distance of about twenty rods, gradually diminishing in height. The notice states that plaintiff's horse and wagon were thrown off this bank, and the insufficiency complained of is, the want of a railing along the same. The distance between the northern terminus of this bank and a point thereon six rods easterly of the crossing is fourteen rods. Thus, on defendant's claim, the place of accident is confined to this space of fourteen rods, all of which is dangerous from lack of a railing. As said in *Reynolds* v. *Burlington*, the town had every advantage in respect to the condition of the road that it could have had if the point had been designated by a monument. Wherever the accident might have happened on that fourteen rods, there the same defect existed as at the point where the evidence showed it did in fact happen.

Plaintiff claimed to recover for an injury to his spine *between* his shoulder blades, and for the damaging consequences to himself resulting therefrom. In his notice he says he was severely injured in his spine *near* the shoulders, and that by reason thereof, he had had no use of his arms, and had been confined to his bed, entirely helpless. His testimony tended to show that by reason of the injury to his spine, his hands and arms were partially paralyzed. The statute provides that the part of the body injured shall be given in the notice, which must be taken to mean, given with reasonable certainty. Now, *between* the shoulder blades is *near* the shoulders; and the statement that plaintiff's spine was injured *near* the shoulders, designates the part of the body with sufficient certainty for all purposes for which the injured part is required to be given. The extent of the injury, and its effect on the plaintiff, are also sufficiently given. And the injury being thus sufficiently described, recovery may be had for the evil resulting to the plaintiff by reason thereof.

The first request to charge was properly refused. It was but another of the many attempts in cases of this kind to have the court rule as matter of law what all the cases in this State say is mainly a question of fact. How could the court say as matter of law that if plaintiff, having found that a train was approaching, " did not stop or turn his horse around so as to avoid such approaching train," he could not recover? Perhaps he was so situated that in point of fact the only prudent course left to him was to do just what he did do—cross the track. Indeed, the jury has said that he was not lacking in prudence in so doing. Shall the law then step in and say, that notwithstanding he acted prudently in fact yet he was negligent in law? Care and prudence always vary according to the exigencies that require vigilance and attention, conforming in amount and degree to the particular circumstances in which they are to be exercised, and from the very nature of the case, as a general rule, to which the case in hand affords no exception, the question of contributory negligence cannot resolve itself into one of law, but must needs be submitted to the jury with instructions. This is the holding of all the cases on the subject in this State. This disposes of all the other requests, as they all embody the same idea as the first, and call for substantially the same ruling. The charge is criticised because it contains a few such expressions as these: * * * " whether he acted recklessly and imprudently. Did he omit to do what a man of *ordinary and common* prudence would have done? * * * If you find that plaintiff * * * was wanting in care and prudence, and did what a man of *ordinary* caution and prudence would not have done, he cannot recover." It is claimed that these expressions erected a false standard by which to measure the plaintiff's conduct, and one that has been condemned in *Briggs* v. *Taylor*, 28 Vt. 180, and later cases. It may be, if these expressions constituted the key-note of the charge, and the degree of care and prudence that the plaintiff was bound to exercise had not been otherwise defined, that the criticism would be just. But these are only a few expressions selected from the whole charge on this subject, the general tone and tenor of which was up to the legal mark in this behalf; and it is not

profitable nor salutary to look into a charge with a carping disposition, but it should be taken as a whole, and although it may contain some expressions that, taken alone, would be error, yet if as a whole it breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand. But what do the terms, "ordinary and common prudence," "ordinary caution and prudence," and the like, import? It is said in *Folsom v. Underhill*, 36 Vt. 580, that the term, "ordinary care and prudence," *when rightly understood*, expresses the true legal measure of care and prudence that a plaintiff is bound to exercise in cases where the question of contributory negligence is involved. In *Coates v. Canaan*, 51 Vt. 131, it is said that those words mean such care and prudence as the average prudent man would exercise under like surroundings and in the like situation. The term, "ordinary prudence," was used in the charge in that case, but it was defined to the jury to mean such prudence as prudent men ordinarily exercise 'in like circumstances. In *Reynolds v. Burlington* it is said that the care and prudence that the law regards as "ordinary," are such as prudent men are accustomed to exercise on like occasions. Thus we see that the words, "ordinary care and prudence," and the like, *when rightly interpreted*, convey the true idea and doctrine of the law on this subject, and import that degree of care and prudence that careful and prudent men would exercise in the same circumstances. In this case the court defined the measure of care and prudence that the plaintiff was bound to exercise in the following language : " It is always incumbent upon the plaintiff that he should act as a prudent and cautious man would have acted in like circumstances and should be on the lookout for danger that he might reasonably expect would come." The exceptions show that this was a repetition of what the court had already told the jury. The court further said to the jury : " Was there anything about this horse that required caution and prudence on the part of a prudent man in using it, and did the plaintiff exercise that caution and prudence in reference to making this crossing ? " Thus the court laid down the true rule for the jury to follow, and the expressions com-

plained of, taken in connection with the whole charge on that subject, did not detract therefrom, nor mislead the jury.

Judgment affirmed.