CHAUNCEY DROWN *v*. NEW ENGLAND TELEPHONE & TELEGRAPH CO. AND CONSOLIDATED LIGHTING CO.

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed July 12, 1908.

*Exceptions—Confined to Stated Objections—Too General—Failure to Brief Points—Evidence—Opinions—When Admissible—Experiments—Discretion of Trial Court—Master and Servant—Injuries to Servant—Linemen—Safe Place to Work—Master's Negligence—Master's Knowledge of Defects—Extraordinary Risks—Electric Wires—Assumed Risk —Contributory Negligence—Obvious Dangers—Question for Jury—Requested Instructions—Safe Place—Amount of Damages—Corporate Character of Defendants—Proximate Cause—Standard of Care—"Ordinarily Prudent Man"— Standard Too Low.*

Where an excepting party objected to the admission of evidence on a specified ground, he will be confined to that ground in the Supreme Court.

In an action against a lighting company and a telephone company by a lineman of the latter, for injuries sustained while working on one of its poles by coming in contact with the lighting company's wires, it was error to allow the foreman of the telephone company's linemen, testifying for plaintiff, to give his opinion that the lighting company's poles could have been placed farther away or made several feet higher so as to have insured safety, it appearing that this was a question only of physical conditions and physical practicability. *Morrisette* v. *Ry. Co.,* 76 Vt. 267, distinguished.

As to matters that call only for observation and knowledge on the part of a witness, to the making and acquisition of which no experimental qualification is necessary, his opinion is not admissible in evidence, unless based on facts testified to by him that are incapable of adequate presentation to anyone but the observer himself.

In an action for injuries received by coming in contact with electric wires strung above a telephone pole on which plaintiff was working, defendants' request to suspend wires in the courtroom over a model of the telephone pole in question, to illustrate the situation to the jury, was addressed to the discretion of the trial court.

In an action against a lighting company and a telephone company for injuries sustained by a lineman of the latter while working at the top of one of its poles by coming in contact with the wires of the lighting company which were strung above those of the telephone company, the evidence showed that the plaintiff knew that the wires were just over the pole, that they were of high voltage, that the current was transmitted in the daytime and was dangerous, and that the only safe way was to keep away from them. *Held,* that the evidence was not sufficient to defeat plaintiff's recovery, as it could not be said as matter of law that he comprehended the danger, or that it was so obvious that he should have comprehended it, for the evidence tended to show that the wires appeared sufficiently high above the pole "to give a good clearance all right," and "looked safe"; and so the questions of contributory negligence and assumed risk were for the jury. *Morrisette* v. *Ry. Co.,* 76 Vt. 267, approved and followed.

Evidence examined, and *held* that it cannot be said as matter of law that plaintiff's testimony that he had to stoop while standing on the crossarm at the top of the telephone pole to keep from "being tangled in the wires" referred to the lighting company's wires,

thus disclosing knowledge of their dangeous proximity, rather than to the telephone wires.

An exception to the court's failure to comply with nine requests to charge, and to the charge as given on the subjects thereof, is too vague and general to be available, unless the charge on those subjects is wholly wrong.

In an action against a lighting company and a telephone company for injuries sustained by a lineman of the latter while working at the top of one of its poles by coming in contact with the wires of the lighting company which were strung above those of the telephone company, since it was the duty of the telephone company to see that the electric wires were at a safe distance from its poles, an instruction that plaintiff could not recover, unless the telephone company knew or should have known the dangerous proximity of the electric wires, was properly refused.

Where the brief stated that a portion of the charge complained of was considered under point 5, but it was not there considered, unless in an exception to what the court said in another part of the charge on a different subject, the exception will not be considered.

Where plaintiff, a lineman in defendant's employ, was injured while adjusting wires to one of its poles by contact with an electric wire of a lighting company which was about five feet above where plaintiff stood on the crossarm, and plaintiff's duty as lineman did not require him to inspect the poles, the risk was not incident to his employment, but was an extraordinary risk which he did not assume, unless he comprehended it, or it was so plainly observable that he will be taken to have comprehended it.

A charge that a servant assumes not only the ordinary risks of his employment, but the extraordinary risks that he comprehends, or which as a prudent man he should comprehend, was a substantial compliance with defendant's requests to charge that a safe place to work means a place free from all dangers that can be perceived by the senses by such observation as a prudent man would make in the circumstances, and that it was plaintiff's duty to look out for himself as well as he could, and observe such dangers as a prudent man would have seen.

A requested charge that in assessing damages the question was, not what the jury would suffer the injury for, but what sum would fairly compensate plaintiff, was substantially complied with by the instruction that in assessing damages the jury must be governed

by the evidence, and that the amount of damages should be such as would fairly and reasonably compensate plaintiff.

The requested charge that in fixing damages the jury should not consider the fact that defendants were corporations, nor the wealth of the parties, was substantially complied with, if the court was bound to comply with it at all, by the instruction that the jury were bound to try the issues submitted to them according to the evidence and the law, and true verdicts give.

The court was not bound to call the particular attention of the jury to the testimony of physicians as to plaintiff's inability to remember; it was sufficient to cover that in a general way.

In an action against a telephone company and a lighting company by a lineman of the former, for injuries sustained while working at the top of one of its poles by coming in contact with the wires of the lighting company which were strung above those of the telephone company, the lighting company's requested instruction that it was not responsible unless it knew or should have known that the employees of the telephone company would, in the course of their work, come in contact with its wires, was properly refused, as it was sufficient if it was so probable that they would do so that the company should have foreseen it.

The lighting company's requested charge that it was not liable for sag in its wires or injury resulting therefrom, unless it had knowledge thereof, or the sag had existed so long that ignorance thereof was the result of negligence, was properly refused, as there was nothing to show the extent of the sag or that it was sufficient to increase the danger.

In actions for negligence, due care on the part of either plaintiff or defendant is such care as a prudent man would exercise in like circumstances; and it was error to instruct the jury that they should test plaintiff's conduct by the standard of "the care and prudence of an ordinarily careful and prudent man in like circumstances." That standard is too low; the words "ordinarily prudent man" suggesting mediocrity of care, if not carelessness. *Briggs* v. *Taylor*, 28 Vt. 181; *Folsom* v. *Underhill*, 36 Vt. 580; and *Reynolds* v. *Burlington*, 52 Vt. 300, approved and followed.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1907, Orleans County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defend-

ants severally excepted. At the close of all the evidence each defendant moved that a verdict be directed for it on the grounds recited in the opinion. Motions overruled, to which the defendants severally excepted. The opinion fully states the case. This case has been once before in the Supreme Court on demurrer to the declaration, see 80 Vt. 1.

*William B. C. Stickney* for the New England Telephone & Telegraph Company.

There was no evidence that defendant neglected any legal duty owed plaintiff. Defendant was bound only to make the pole as safe as it looked to be, not safe,—to remove a hidden danger or make it known. Defendant's duty in this regard varied with plaintiff's apparent ability to see and appreciate the danger. *Griffith* v. *Dudley,* 9 Q. B. D. 357; *Sias* v. *Cons. Lighting Co.,* 73 Vt. 35; *Morrisette* v. *C. P. Ry. Co.,* 74 Vt. 232; *Harsha* v. *Babicx,* 54 Ill. App. 586; *Chicago R. R. Co.* v. *Lee,* 29 Ind. App. 480; *Flynn* v. *Beebe,* 98 Mass. 575; *Feely* v. *Pierson Cordage Co.,* 161 Mass. 426; 4 Thompson Comm. Negl. 2nd Ed. §§3767-3873; *LaFlam* v. *Missisquoi Pulp Co.,* 74 Vt. 125; *Meehan* v. *Holyoke St. Ry. Co.,* 186 Mass. 511; *Miss. River Logging Co.* v. *Schneider,* 74 Fed. 195; *Junior* v. *Elec. Lt. & Power Co.,* 127 Mo. 79; *Atlas Engine Works* v. *Randolph,* 100 Ind. 293; *Big Creek Stone Co.* v. *Wolf,* 138 Ind. 596; *Skinner* v. *Central Ry. Co.,* 73 Vt. 336; *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427; *Latremouille* v. *B. & R. R. Co.,* 63 Vt. 336. Plaintiff should be presumed to have knowledge of the danger in question. *Moore* v. *East Tennessee Tel. Co.,* 142 Fed. 965; *Griffin* v. *O. M. R. Co.,* 124 Ind. 326; *Larson* v. *McClure,* 95 Wis. 533; *Dixon* v. *West. U. Tel. Co.,* 68 Fed. 630.

Plaintiff testified that he has no doubt that he looked up before ascending the pole. If he did, he must have seen the electric wires. If he did not look up, he was negligent. He further states that he was obliged to stoop to avoid the electric wires. This shows that when he finished his work he for the moment forgot the dangerous proximity of the electric wires. All this shows him guilty of contributory negligence as matter of law. *Law* v. *C. D. Prg. & Tel. Co.,* 140 Fed. 558; *Columbus R. R. Co.* v. *Dorsey,* 119 Ga. 363; *Whelton* v. *West End St. Ry.*

*Co.,* 172 Mass. 555; *Jennings* v. *Tacoma Ry. etc. Co.,* 7 Wash. 275.

Plaintiff assumed the risk of the danger incident to doing the work in question; and it is immaterial to the consideration of this proposition either that the telephone company was negligent in allowing the dangerous situation complained of to exist, or that plaintiff was not, as matter of law, guilty of contributory negligence; for the defence of contributory negligence and assumption of risk are wholly distinct and different. 21 Harvard Law Review, 255; *Proctor, etc. Ry. Co.* v. *McDade,* 191 U. S. 64; *U. P. R. R. Co.* v. *O'Brien,* 161 U. S. 451; *Thomas* v. *Quartermaine,* 18 Q. B. D. 685; *Webbin* v. *Ballard,* 17 Q. B. D. 122.

The evidence shows conclusively ample opportunity for the plaintiff's perception of the existence of danger and his full comprehension of the danger that he was liable to encounter, and could not escape encountering except by the exercise of extreme care upon his part,—a duty which his knowledge and experience and obligation to his employer and himself cast upon him. *Sullivan* v. *India Mfg. Co.,* 113 Mass. 397; *Anderson* v. *Inland Tel. Co.,* 19 Wash. 575; Reinhard on Agency, §477; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass. 572; *Fitzgerald* v. *Conn. R. Paper Co.,* 155 Mass. 155; *Tramway Co.* v. *Nesbit,* 6 Am. El. Cas. 373.

It was error for the court to instruct the jury that the danger in question was an extraordinary risk. Where the servant knows of the extraordinary risks, they "may assume in legal effect the shape and proportions of only ordinary and incidental perils, adding nothing to the liability of the master, and affording the servant no additional grounds for recovery in the event of injuries received." *Alcove* v. *Chicago etc. R. Co.,* 108 Mo. 81, 18 S. W. 188; Labatt, Master and Servant, §276; *Carbine* v. *Bennington etc. R. R. Co.,* 61 Vt. 348; *Johnson* v. *B. & M. R. R.,* 78 Vt. 344; *Louisville etc. R. Co.* v. *Sandford,* 117 Ind. 267; *Mahoney* v. *Dore,* 155 Mass. 518; *Harrison* v. *Detroit etc. Ry.,* 137 Mich. 78.

*Dunnett & Slack* for the Lighting Company.

Plaintiff assumed the risk incident to the work in question, because he assumed such risks as by the exercise of ordinary care he would have known. *Pennsylvania Co.* v. *Ebough,* 53 N. E. 763; *Benjamin etc. Co.* v. *Costello,* 42 Atl. 766; *Swift* v. *McInery,* 90 Ill. App. 294; *Mayor etc.* v. *Lottig,* (Md.) 51 Atl. 841; *Columbus R. Co.* v. *Dorsey,* 46 S. E. 635; *Buckley* v. *Westchester Lighting Co.,* 87 N. Y. 763; *Citizens Telephone Co.* v. *Wescott's Admx.,* 99 S. W. 1153; *Morgan* v. *Hudson River Telephone Co.,* 100 N. Y. 539; *Greenwell* v. *Washington Market Co.,* 21 D. C. 298; *Madigan* v. *Flaherty,* 50 Ill. App. 393; *Patterson* v. *Hunneway,* 148 Mass. 94; *Gaffney* v. *Brown,* 150 Mass. 479.

This defendant is not liable for the sag in the wire nor any injury which resulted therefrom unless it had knowledge of the sag, or in the absence of such knowledge the sag had existed long enough so that its ignorance was the result of its own negligence. *Klineinter* v. *Nashua Mfg. Co.,* 67 Atl. 573; *Chicago Hardware Co.* v. *Matthews,* 124 Ill. App. 89; *Nelson* v. *Reynolds Tobacco Co.,* 144 N. C. 418; *Bundy* v. *Sierra Lumber Co.,* 149 Cal. 772; *Mo. Pac. Ry. Co.* v. *Dorr,* 85 Pa. 533; *Stackpole* v. *Wray,* 182 N. Y. 56; *Abbott* v. *Marion Min. Co.,* 112 Mo. App. 550; *Cudahy Packing Co.* v. *Roy,* 99 N. W. 231.

It was error to allow the jury to test plaintiff's conduct by the standard of the "ordinarily prudent man." *Briggs* v. *Taylor,* 28 Vt. 183; *Folsom* v. *Town of Underhill,* 36 Vt. 580; *Reynolds* v. *Burlington,* 52 Vt. 300.

*W. M. Wright, Frank D. Thompson,* and *J. W. Redmond* for the plaintiff.

Defendant's request to be permitted to string wires in the courtroom over a model of the pole in question was addressed to the discretion of the trial court. *Hardwick Savings Bank* v. *Drennan,* 72 Vt. 438; *U. S.* v. *Ball,* 163 U. S. 662, 41 L. Ed. 300; *Ord* v. *Nash,* 50 Neb. 335; 2 Elliott Ev. §1246; 17 Cyc. 283; *Leonard* v. *So. Pac. Co.,* 21 Ore. 555; *Wood* v. *Willard,* 36 Vt. 82; *Hale* v. *Rich,* 48 Vt. 217.

Defendant's exception to the failure of the court to comply with its nine requests to charge and to the "charge of the court given on that subject," is too vague and general to reserve

any question. *State* v. *Sargood,* 77 Vt. 80; *White* v. *Lumiere etc. Co.,* 79 Vt. 200; *Drouin* v. *Wilson,* 80 Vt. 335; *Luce* v. *Hassam,* 76 Vt. 450.

It is well settled that persons and corporations conducting dangerous currents of electricity along the public highway must exercise the care of a prudent man to see to it that persons in the legitimate exercise of their rights in and upon such highways are not injured by contact therewith, and where the wires carry a strong current of electricity dangerous to human life, that care means the highest degree of care possible in the circumstances. *Clements* v. *Louisiana Elec. Lt. Co.,* 44 La. An. 692, 32 Am. St. Rep. 348; *Giraudi* v. *Elec. etc. Co.,* 107 Cal. 120, 48 Am. St. Rep. 114; *Ennis* v. *Gray,* 87 Hun. 355; *Haynes* v. *Raleigh Gas Co.,* 114 No. Car. 203, 41. Am. St. Rep. 786; *City Elec. Ry. Co.* v. *Conery,* 61 Ark. 381, 54 Am. St. Rep. 262; *Uggla* v. *West End St. Ry. Co.,* 160 Mass. 351; *Huber* v. *La-Crosse City Ry. Co.,* 92 Wis. 636, 53 Am. St. Rep. 940; *Rowe* v. *Taylorville Elec. Co.,* 17 Am. Neg. Rep. 215; *Perham* v. *Portland Elec. Co.,* 33 Ore. 451, 72 Am. St. Rep. 730; *Snyder* v. *Wheeling Electrical Co.,* 43 W. Va. 661, 64 Am. St. Rep. 922; *Brown* v. *Edison Elec. Co.,* 90 Md. 400, 78 A. S. R. 442; *Fitzgerald* v. *Edison Elec. etc. Co.,* 200 Pa. St. 540, 86 Am. St. Rep. 732; *Mitchell* v. *Raleigh Elec. Co.,* 129 N. C. 166, 85 Am. St. Rep. 735; *McAdam* v. *Central Ry. etc. Co.,* 67 Conn. 445, 35 Atl. 341; *Reagan* v. *Boston Elec. Lt. Co.,* 167 Mass. 406, 45 N. E. 743; *McLaughlin* v. *Louisville Elec. Lt. Co.,* 18 Ky. Law Rep. 693; *Illingsworth* v. *Boston Elec. Lt. Co.,* 161 Mass. 583, 37 N. E. 778; *Anderson* v. *Jersey City Elec. Lt. Co.,* 63 N. J. L. 387, 43 Atl. 654; *Neward Elec. etc. Co.* v. *Garden,* 78 Fed. 74; *Fasset* v. *Town of Roxbury,* 55 Vt. 552; *McGovern* v. *Smith & Hays,* 73 Vt. 52.

At the time the lighting company constructed its high tension line where it did, it must be held to have anticipated that the employees of the telephone company would be working in the highway in the business of that company, and might come in contact with the electric wires. *Rowe* v. *Taylorville Elec. Co.,* 17 Am. Neg. Rep. 215; *Fitzgerald* v. *Edison Elec. Co.,* 200 Pa. St. 540; *McAdam* v. *Central Ry. etc. Co.,* 67 Conn. 445, 35 Atl. 341.

ROWELL, C. J.    This is an action for negligence.    It was here once on demurrer to the declaration, and is reported in 80 Vt. 1, 66 Atl. 801.

The alleged negligence of the lighting company is, the erection of a line of electric light and power wires of high voltage above, and in dangerous proximity to, the telephone company's line, by reason of which the plaintiff, an employee of the telephone company, in the performance of his duty as lineman, in adjusting wires to the crossarms on a telephone pole below and near the power wires, came in contact with them, and was burned and injured.    The alleged negligence of the telephone company is, that it suffered that condition to remain, neither causing the lighting company to remove its wires, nor removing its own.

The plaintiff's evidence tended to show that on the day of the accident a gang of linemen in the employ of the telephone company was running a line of four wires, attaching them to the lower arms of a line of poles extending along the highway from Williamstown to Graniteville, which intersected at nearly a right angle a highway from Barre to Graniteville, the accident happening on the corner pole at the intersection of said highways; that the telephone poles were set on the left side of the highway going towards Graniteville from the Williamstown road; that on the road from Barre, extending past the intersection of the Williamstown road and on to Graniteville on the same side of the highway as the telephone poles, was a line of the lighting company's poles, on which at the time in question were crossarms, attached to which were three uninsulated electric light and power wires, each carrying a deadly current of 12,000 volts, transmitted in the day time, and present at the time of the accident; that the telephone poles carried two six-pin crossarms about four inches wide; one, from 5 to 8 inches from the top of the pole, and the other, about 20 inches below it in the clear; that the corner pole, on which the accident happened, had four of these crossarms, two upper and two lower, set with the ends towards the road nearly together, and the ends towards the fence spread a little, the better to bear the strain of the wires, turned at that point; that the upper arms were 5 or 6 inches from the top of the pole, and the others, 20 inches below in the clear; that there were six wires on the upper arms, and two on the lower arms, attached to the insulators on the pins nearest

the pole, called pole pins; that the linemen were engaged in attaching the four wires, two on each side of the pole, to the second and third pins on either side of the pole pins, which was done by reeling off the wire, laying it along the highway on either side of the poles, and then hanging it, the linemen climbing the poles, adjusting the insulators to the pins, and placing the wires in position for tying to them, the groundman hauling the wire taut, and when taut, the lineman on the rear pole giving the word to tie, and all tying at the same time.

It appeared that there was some slack in the power wire at the time of the accident, but how much the wire directly over the telephone pole in question was lowered thereby did not appear, nor what caused the slack, nor how long it had existed.

The telephone line was constructed in that locality in 1902, and the poles and wires of the lighting company placed in 1903 where they were at the time of the accident.

There was nothing to show what knowledge, if any, the lighting company had of how repairs were made or other work done on the telephone line, nor whether, after the poles were erected, it was necessary or not to use any space above the upper crossarm.

The accident happened about noon on May 4, 1905. At that time there was a man on the pole south of the corner pole, and a man on the pole north of the corner pole. Jesse Haycock, a lineman, had gone up the corner pole to tie the wires to the two outside pins towards the highway, to do which he took his position on the lower crossarm, with one leg thrown over it and the other through the brace, with his spur sticking in the pole. This pole was regarded as difficult because it was a corner pole, and guyed on the fence side, the guy extending about to the lower crossarms. The plaintiff was trying to assist Haycock, which was proper and in the line of his duty. Owing to Haycock's position on the pole, the plaintiff, who was to tie the wires to the outside pins towards the fence, could not work upon the lower crossarms, so he climbed to the upper crossarms, bestrode one of them, placed his feet on one of the lower arms, leaned over, head down, tied the wires, and in straightening himself to go down, came in contact with one or more of the power wires, and was shocked and injured. One of those wires was directly over, and only 27 inches from, the top of the telephone pole,

and only 59 inches from the lower crossarm on which the plaintiff stood, and he was 67 inches tall.

There was no controversy as to the situation, nor as to the way the accident happened; and no question as to the character and extent of the plaintiff's injury, which was most serious.

The plaintiff was allowed to show the respective duties of the different members of the gang of linemen with which he was working at the time of the accident, and to show that it was the duty of the foreman of the gang to warn the men of any danger that came to his knowledge, and that he did not in this instance know of any danger to a workman in the position occupied by the plaintiff at the time of his injury. The lighting company alone insists upon this exception, and its only claim is that it had a right to rely upon the exercise of due care by the plaintiff, but that the effect of this showing was, to lead the jury to believe that the plaintiff had a right to rely on his foreman to inform him of danger, and that as long as he heard nothing from him, he had a right to assume that he was safe. But this objection was not made below, and therefore cannot be made here. *Massucco* v. *Tomassi*, 80 Vt. 186, 67 Atl. 551.

The plaintiff was permitted to elicit the opinion of the foreman of the telephone company's linemen, without stating the claimed facts on which it was based, to the effect that the lighting company's poles near the place of accident could have been placed three feet nearer the fence, or have been five feet taller, and thus have insured safety. The plaintiff justifies the ruling, for that it was largely a question of practical experience, and likens it to *Morrisette* v. *Canadian Pacific*, 76 Vt. 267, 56 Atl. 1102, in which the plaintiff, a. practical railroad man, with experience and knowledge in that line, was permitted to testify his opinion that the switch in question could have been set in another place and been safe. But that case differs from this, for there it was not a question of physical conditions merely, but of convenience and efficiency as well; while here, as the exceptions show, it was a question only of physical conditions and physical practicability. This called only for observation and knowledge on the part of the witness, to the making and acquisition of which no experimental qualification was necessary. Hence the rule contended for by the defendants applies, namely, that opinion is not admissible in such cases, unless based on facts

testified to by the witness that are incapable of adequate presentation to any one but the observer himself.

For the purpose of reproducing conditions such as the plaintiff's evidence indicated them to have been at the time and place of the accident, the defendants asked leave to suspend wires over a model of the telephone pole on which the plaintiff was injured, erected in the courtroom, answerable to the power wires with which he came in contact. This was denied as matter of discretion; and that it was such matter, cannot be doubted.

The telephone company moved for a verdict for want of evidence of negligence on its part or that it owed the plaintiff any duty, and for that the testimony showed contributory negligence and assumption of risk. The lighting company moved for a verdict on the last two grounds.

The testimony shows beyond reasonable doubt that the plaintiff knew that the electric line was there, and that its wires ran over the pole in question; knew by having been told, of their high voltage; knew that the current was transmitted in the day time, and was dangerous though insulated; and knew that the only safe way was to regard the wires as alive, and to keep away from them. But this does not defeat him, for it does not follow therefrom as matter of law that he knew and comprehended the danger, nor that it was so plainly observable that he will be taken to have known and comprehended it. It does, however, present the case in this respect as it is presented by the declaration, for that does not negative knowledge on the part of the plaintiff that the electric line was there, but only knowledge of the close proximity of its wires to the pole, and that the pole was an unsafe place to work; both of which allegations were admitted by the demurrer, and the case ruled accordingly, whereas now they stand for consideration on the testimony, which the plaintiff claims does not essentially vary the case from what it was on demurrer, and therefore that the rulings then are controlling now, while the defendants claim the contrary.

It is to be noticed that the lighting company's motion raises no question as to its duty to the plaintiff nor as to its breach of duty, but is based solely on contributory negligence and assumption of risk; and that motion and the telephone company's motion will be considered together as far as they are based on

the same grounds, as the questions are essentially the same as to both defendants. But first we will consider that part of the telephone company's motion relating to want of evidence of duty or negligence on its part.

As to duty. The company does not claim as a general proposition that it owed the plaintiff no duty, but only that the danger was so obvious that he assumed the risk, and thereby absolved the company from any duty to him in respect of the dangerous situation complained of. This necessitates consideration of the testimony pertinent to the question. And first it is said that the linemen were inspectors. But this does not appear with sufficient certainty to permit it to be so held as matter of law. As to assumption of risk, the testimony shows that standing at the foot of the pole and looking up, as the plaintiff testified he had no doubt he did, the power wires were plainly visible. But the testimony also tended to show that you could not calculate very accurately the distance they were above the pole, but that they appeared to be far enough above to "give a good clearance all right" though near, and "looked safe" to the foreman of the gang; and that even after one had ascended the pole, he could not tell exactly then whether a man could clear on top of it or not.

The plaintiff testified on cross-examination that when he got his feet onto the lower crossarm, he had to be stooped to keep himself in position, or else he would "be tangled amongst the wires." This defendant contends that there were no wires that he could avoid being "tangled amongst" by stooping but the power wires, and therefore that he must have meant those wires, and that that defeats him, as it shows conclusively that he knew and comprehended the danger, and therefore assumed the risk. That that testimony is exceedingly capable of that construction cannot be doubted, and if reasonably capable of no other, the effect claimed for it might follow. But we are not certain that the plaintiff did not mean the telephone wires and not the power wires, for he testified on re-direct examination that the position a lineman would be in to do what he was to do would be, to have both hands on the upper crossarm, and both feet on the lower crossarm between the pole and the pole pin, and then, in order to get his foot up over the wires that were stretched right out straight almost at the same height as the

top of the pole, he would have to throw himself nearly on his stomach at the top of his pole, and lift his foot up there (indicating), and that that drew his knees up in good shape to swing around after he gets his foot up and throws it over, and then he would be looking down to the ground; that that was the position he took, though men have different ways of getting into position. The exceptions show that when he was tying in the wires, he was leaned over, head down.

Though this does not show with much certainty that the plaintiff did not mean the power wires, yet it casts sufficient doubt upon his meaning to make it a question of fact and not of law.

When the case was here before, we classed it on this question of assumption of risk with *Morrisette* v. *The Canadian Pacific R. R. Co.*, 74 Vt. 232, 52 Atl. 520, where a brakeman was swept from the side of a moving freight car by a switch standing near the track, which he had never passed before on the side of a car, and had never been told and did not know that it was near enough to the track to endanger one passing it on the side of a car, and held that here as there, the danger was not so plainly observable that the law would say that the plaintiff assumed the risk, but that the question was for the jury. And the case is still to be classed with the *Morrisette* case on the testimony, and consequently the ruling before must be the ruling now.

This disposes of the question of want of negligence on the part of the telephone company, for that is urged only on the ground that its duty was limited to making the place as safe as it looked to be, and that the danger was so obvious that it carried its own notice. This ground failing, the proposition itself fails.

The question of contributory negligence must be ruled now as it was before, to be for the jury, for the testimony is no more decisive of it than is the declaration, especially as the element of forgetfulness is now present, by which the defendants account for the accident.

The telephone company submitted twelve requests to charge, and excepted to the refusal to charge according to the first nine of them, and to the charge as given on the subjects thereof.

We have often held that such exceptions are too general to be available, unless the charge on the subjects of them is wholly wrong, which is not claimed here.

The court charged the company with knowledge of the situation as matter of law.    To this the company specifically excepted, and claims that it depended on the linemen for information as to any dangerous condition along its line that might affect the safety of its workmen; that if the plaintiff's knowledge of the risk was an open question, the company's knowledge of it was equally so, as its business was conducted; that in the circumstances there was no necessary inference of knowledge on its part from the length of time the condition had existed; and therefore that it was entitled to have its first and second requests complied with, which were to the effect that there could be no recovery against it under the first count, unless knowledge of the condition was brought home to it, and none under the second count unless it knew, or had reason to know, the condition. But the basis of these requests, as the exception is argued, is the assumption that the linemen were inspectors, which the court could not assume on the testimony, as we have said, and therefore it could not comply with the requests without saying, in effect, and as a general proposition, that the company's duty in respect of a safe place was in abeyance until it knew, or had reason to know, the danger.    But this could not be said, for it had already been held in the case that it was the duty of the company to see to it that the electric wires were a safe distance from the pole, and the testimony does not vary the case in that respect.

The telephone company excepted to the charge respecting the right of the plaintiff to assume that the defendants had performed their duty.    Its brief says that the exception "is considered under point fifth."    But there is no consideration of it under that point, unless it is contained in an exception to what the court said in another part of the charge about the company's duty to maintain a safe place, and being chargeable with knowledge.    But whether the ground of that exception stated therein is the consideration of this exception referred to, we do not know, and therefore pretermit the question.

The telephone company requested the court to charge that if the plaintiff knew of the existence of the electric line, then, in

view of his experience as a lineman, the risk was not an extraordinary risk, but, as matter of law, an obvious risk, which the plaintiff must be taken to have assumed if he ascended the pole, neglecting to inform himself, or to observe the distance of the electric wires above the pole.   But the court assumed and charged that the risk, as disclosed by the evidence, was not a risk ordinarily incident to the plaintiff's employment, but a risk that is known to the law as an extraordinary risk—one not incident to the business as it ordinarily exists.   To the charge that the risk was not ordinarily incident to the business, the company excepted, and submits that whether a risk is ordinary or extraordinary depends upon the circumstances of the case, and that the circumstances of this case are such that it could not be assumed as matter of law that the risk was extraordinary, and that in characterizing it as such, the court ignored the claim that the risk was obvious, a necessary incident to the conduct of the business, and assumed by the plaintiff as matter of law in his contract of employment.

But it cannot be said that the risk was a necessary nor an ordinary incident of the business in which the plaintiff was engaged; nor, as we have said, that it was so plainly observable that the plaintiff can be taken as matter of law to have assumed it.   The case stands on this question as it stood before, when we held that the risk was not ordinary, and therefore assumed by the plaintiff; but extraordinary, and therefore not assumed by him, unless he knew and comprehended it, or it was so plainly observable that he would be taken to have known and comprehended it.

Both defendants excepted, in effect, to the submission of the case to the jury at all.   But that question is virtually disposed of by the holdings on the motion for a verdict.

The lighting company requested the court to charge that a safe place to work means, in law, a place free from all dangers that cannot be perceived by the senses by such observation as a prudent man would make in the circumstances of the plaintiff. The company excepted that this was not complied with.   But we think it was, substantially, for the court charged that a servant assumes, not only the ordinary risks of his employment, but all the extraordinary risks thereof that he knows and compre-

hends, or that, as a prudent man, he ought to know 'and comprehend in the circumstances.

This instruction was also a substantial compliance with the company's request to charge that it was the duty of the plaintiff to look out for himself as well as he could, and to see all such dangerous things as a prudent man would have seen; and if he did not do it, and his failure contributed to the happening of the accident, he could not recover.

The court also substantially complied with the company's request to charge that in assessing damages the question was, not what the jury would suffer the injury for, but what sum would fairly compensate the plaintiff, for the court told the jury that in the matter of assessing damages it must be governed wholly by the evidence given in court, and that the amount of damages should be such a sum as would fairly and reasonably compensate the plaintiff.

The company claims that the court failed to comply with its request to charge that in fixing damages, the fact that the defendants were corporations was not to be considered, nor the wealth of any of the parties, but that the question was to be settled precisely as if it was between two individuals. All this the jury would know without being told, if they were mindful of their oath; and the court reminded them of it at the commencement of the charge, by telling them that by it they were bound to try each and every issue submitted to them, according to the evidence given in court and the laws of the State, and true verdicts give. This was a sufficient compliance with the request, if the court was bound to comply with it at all, as to which we say nothing.

The request to charge as to the light in which the plaintiff's testimony should be weighed was sufficiently complied with. The court was not bound to call particular attention to the testimony of the doctors concerning his inability to remember. It was enough that the court covered that in a general way, though without special mention of it.

The company excepted to the refusal to charge that it could not be held responsible unless it knew, or ought to have known, that the employees of the telephone company would, in the course of their repairs, be in position to come in contact with the electric wires. But such a charge would have gone too far, for it was

enough, certainly, if such a thing was so natural and probable that the company ought to have foreseen that it might happen, which is quite different from knowing that it would happen.

This virtually disposes of the exception to the charge that it was the duty of the company to construct and maintain its line so as not to injure the employees of the telephone company while in the discharge of the duties of their employment, the ground of the exception being that the charge should have measured the company's duty by what it knew, or ought to have known, of the employees' duties.

It is claimed that it was error not to charge that the company was not liable for the sag in the wire, nor for any injury resulting therefrom, unless it had knowledge of the sag, or it had existed so long that its ignorance was the result of its own negligence. But the court well refused such a charge, because, if for no other reason, there was nothing to show the extent of the sag, nor that it was enough to increase the danger perceptibly.

The court told the jury that it should have occasion at different times during the charge to refer to "the prudent man, to reasonable care," and words of the same import; that they would understand when those words were used, "the care and prudence of an ordinarily careful and prudent man in like circumstances"; that that was the standard by which they would measure the care of the plaintiff when they came to consider the question of whether he had acted carefully and prudently—"the care and prudence of an ordinarily prudent man under the circumstances of the case"; that this was not an absolute standard; that the care and prudence of a prudent man under one set of circumstances might be negligence under another set of circumstances, and that that was why the court had told them that it must be the care and prudence of a prudent man acting in similar circumstances; and that in determining any question where that standard had to be applied, they would apply it with their knowledge as men of affairs of the degree of care that the "prudent man, the man of ordinary prudence," would exercise under such circumstances as they were considering.

When the court came to direct the attention of the jury to the question of the plaintiff's care, it told them to consider whether he was in the exercise of the care and prudence of "an

ordinarily prudent man, that is, whether he was without fault on his part''; that he must satisfy them by a fair balance of the evidence that he was in the exercise of due care at the time of the injury; that if they could say he was in the exercise of the care and prudence of ''an ordinarily prudent man,'' then he would make out that part of his case, but if he failed to reach that standard, and fell short of it, and his negligence contributed to his injury, he could not recover.

Thus it appears that the standard erected by which to measure the conduct of the plaintiff in respect of care and prudence was that of the ''ordinarily careful and prudent man.'' This standard was too low to meet the requirements of the law. In *Briggs* v. *Taylor,* 28 Vt. 181, an officer was sued for not taking good care of personal property attached by him on mesne process. The court charged that it was the duty of the officer to use ''ordinary care and prudence'' in that behalf, and defined that degree of care and prudence to mean, ''such care and prudence as men of ordinary care and prudence usually exercise over their own property.'' This Court held the charge to be erroneous, because calculated to mislead the jury. The Court said that the language used did not signify a fixed quality of mediocrity even; that *ordinary, middling,* and *mediocrity,* when applied to character, import to the mass of men a very subordinate quality or degree—something quite below what we desire in an agent or a servant, and what we have a right to require in a public servant especially; that a man who is said to be middling careful, ordinarily careful, is understood to be careless, and sure not to be wanted. This doctrine was approved and applied in the highway damage case of *Folsom* v. *Underhill,* 36 Vt. 580. There the defendant requested the court to charge that the plaintiff's conduct in driving upon the bridge must have been that of ''a careful and prudent man.'' The court refused to charge as requested, but charged that the plaintiff must have exercised ''ordinary care and prudence'' in that behalf. This Court said that the words ''ordinary care and prudence'' are sometimes liable to misconstruction, though when rightly understood, they express the requisite degree of care and prudence; yet that the rule should have been expressed in terms more definite and less liable to be misunderstood, and that the request should have been complied with.

So in *Reynolds* v. *Burlington,* 52 Vt. 300, which was also for injury on a highway, the court charged as requested that if want of care on the plaintiff's part contributed to his injury he could not recover; but in charging as to the degree of care the plaintiff was bound to exercise, said it was that measure of care and attention that "persons of ordinary care, men generally, ordinary prudent men," would exercise under similar circumstances. It was held that the charge failed to convey to the jury the true sense and force of the rule, but that the subject was presented in manner and effect held in the cases above referred to not to be answerable to the requirement of the law; that the entire exposition by the court of "ordinary care," "ordinary prudence," "ordinary prudent men," was calculated to leave an impression upon the jury of a very different kind and degree of prudence from that which the language and expositions in the cases above referred to would make, the last of which was expressly held to be authoritative in this respect, and the other was commended as having done excellent service towards giving definiteness and practical usefulness to the legal idea of the care to be exercised in such cases. The Court went on to say that a man of ordinary care, of ordinary prudence, as expressed in common parlance, is not regarded by the law as being to the common understanding the same as characterized by the expression, "a prudent man," "prudent men."

In *Fassett* v. *Roxbury,* 55 Vt. 552, it is said, following *Folsom* v. *Underhill,* that the words, "ordinary care and prudence," and the like, *when rightly interpreted,* convey the true idea and doctrine of the law on this subject, and import that degree of care and prudence that careful and prudent men would exercise in the same circumstances; and it was held that the court rightly interpreted those words to the jury, and that the expression complained of, taken in connection with the whole charge, did not detract therefrom nor mislead the jury. But this cannot be said of the charge in this case, for the court barred this way of escape by telling the jury to start with that it should have occasion at different times during the charge to refer "to the prudent man," "to reasonable care," and words of the same import, and when it did, that they would understand that they meant "the care and prudence of an ordinarily careful and prudent man in like circumstances." And this instruction was not

changed nor modified, but was the refrain of the charge on this point throughout.

As said of *Briggs* v. *Taylor* in *Reynolds* v. *Burlington,* so it may be said of all the cases to which we have referred, that in no case since those, has this Court designed to modify the rule as there stated and established. The very recent and as yet unreported case of *Williams* v. *Norton Brothers,* 69 Atl. 146, which was by a servant against the master for negligence, is referred to as modifying the rule. But certainly it was not intended to be such, and when attentively considered it is not such, but belongs to the same class as *Fassett* v. *Roxbury,* for though the words, "ordinary care," were used in the charge in respect of providing a safe place, yet the court further charged that the defendants were required to use the care of careful and prudent men; and though this Court did not discuss the question, but said that that was a correct statement of the law, it must be taken to have said that in view of the whole charge, for there the court was not precluded as it is here, from construing the charge as a whole.

*Judgment reversed and cause remanded.*