EIDE H. HINNERS ET AL., DEFENDANTS IN ERROR, v. EDGEWATER AND FORT LEE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued July 8, 1907—Decided March 2, 1908.

Upon the trial of an appeal from the award of commissioners in a condemnation proceeding the trial court in effect charged the jury that their view of the premises (which under the Condemnation act is required to be made) might be used by them in forming their judgment of the testimony and in reaching an opinion upon its consideration, and that their opinion upon the questions they were to decide should be based upon the testimony as thus understood by them and applied to what they had seen. *Held*, that there was no error in this instruction. *Query.* As to the proper construction of the provision of the Condemnation act that requires a view of the premises by the trial jury.

On error to the Circuit Court of Bergen county.

For the plaintiff in error, *Collins & Corbin.*

For the defendants in error, *Griggs & Harding.*

The opinion of the court was delivered by

GARRISON, J. This writ of error is brought by the railroad company to reverse the judgment rendered in the Circuit Court of Bergen county upon an appeal from the award of commissioners in a condemnation proceeding. The trial errors relied upon for reversal all relate, with a single exception, to instructions that were rendered necessary by the some-

what unusual form of the issue submitted to the jury upon the initiative of the plaintiff in error. The feature of the trial thus alluded to arose in this way: The land condemned was a strip fifty-four feet in width, upon which, and practically covering the whole of which, stood the saw and planing mill of the defendant in error, which must either be destroyed by the taking of the strip, or else must be removed to some other part of the owners' tract where a site could be provided by filling in. The mill was a going concern in full operation. This being the situation of affairs, the counsel for the condemning party, the plaintiff in error here, made early in the trial the following announcement:

"Mr. Corbin—We propose to give to the owners an allowance of time to move everything on it. We think the proper way for both parties is to reduce the damages, and the proper way to do that is the moving of the present buildings which are there, giving the time to do it up to the 1st of June next. We expect to give them the value of the land and the moving of the buildings."

Thenceforward throughout the trial, as far as the railroad company is concerned, the case for the jury was shaped with reference to the propositions thus interjected into the trial. That the issue thus conceived was *in invitum* the landowners is evident from the following objection made by their counsel just before the railroad company (which was the appellee) commenced with its proofs:

"Mr. Griggs—I object to any evidence being introduced which will justify the jury in basing their award upon the compulsory arrangement in this case through this court by which we are bound to receive that building and the fixed machinery on that property. We are not bound to accept the opinions of experts and others that we can move that building and it be just as good as it was before. We are entitled to have money. They might say this piece of property is as good as it was before, and therefore we shall not pay for it. We are not bound to accept a proposition from them that we will put our property back somewhere else. We might not want this mill set back there. My opinion is, we are entitled to

have compensation for the buildings which they take, and the machinery in them."

It will be perceived, therefore, that counsel at the trial were not at one in regard to the issue to be submitted to the jury, which lack of unanimity naturally found expression in their respective requests to charge. With the requests made by the landowner we are not now concerned, since there is no cross-assignment of errors, but the requests made by the railroad company and the exceptions to the matters charged must obviously be treated with reference to the issue introduced by it and tried out in its behalf. Specific mention is made of the course thus pursued at the trial not for the purpose of judicial animadversion upon it, and certainly not with any idea of giving it our implied approval, but solely in order that the party who is responsible for the narrowing of the issue, and for the consequent instructions to the jury, shall not take any advantage from the abstract inappropriateness of such instructions to the issue that is normally presented upon trials of this character. Normally the issue upon the trial of an appeal in condemnation cases is the value of the land taken and compensation for injury done to the residue of the tract; or it may be more generally stated that the issue is the difference in value of the tract before and after the taking. In lieu of this comparatively simple question, the issue introduced by the plaintiff in error required the jury to ascertain the cost of the removal of a mill and its contents, the loss of and injury to the business of a going concern, the cost of providing a site for the building so removed, and other matters incidental to the same scheme. Plaintiff in error, having insisted upon this scheme as one that reduced its damages, and having occasioned its submission to the jury, cannot now obtain a reversal of the judgment rendered on the trial verdict merely because of some academic or abstract errancy in such submission that was not, as applied to the concrete scheme in question, injurious to the plaintiff in error. The review of the assignments of error is resolved, therefore, very largely into a consideration of their injurious or non-injurious character as regards the plaintiff in error, and is for this reason devoid of any

such general interest as would warrant an extended discussion. The matters thus included, although considered *in extenso,* will be disposed of for the benefit of counsel by a brief memorandum in the order in which the points are set down in the brief of counsel for the plaintiff in error.

We conclude—*first,* that the admission of proof of the amount of business carried on in the mill that was to be removed was not injurious to the plaintiff in error. It tended to show the present available use and value of the land. It also threw some light upon the extent of the undertaking involved in the proposed removal and restoration of the plant itself, and the jury was expressly charged to allow nothing for the loss of the profits of the business.

*Second.* It was not error for the trial court to charge that the landowner had a right to recover the fair cost of putting its mill upon another part of the tract if the jury thought that such mode of restoration would be cheaper to the railroad company than the scheme of removal suggested by it. The plaintiff in error could not be injured by a plan that was cheaper to it than the one upon which it was insisting, and it was solely upon this hypothesis that the instruction in question was given.

*Third.* The second request of the plaintiff in error did not correctly state the legal rule, and hence it was not error to decline to charge it.

*Fourth.* The charge with respect to the lawful and unlawful obstruction of the right of way by the railroad tracks, while too general to be of much practical help to the jury, was correct as far as it went. If a more specific instruction was desired, the attention of the trial judge should have been directed to the matter before the jury was finally charged.

Our conclusion is that no error injurious to the plaintiff in error is shown upon any of the foregoing points. The charge as a whole was, to say the least, favorable to the condemning party.

A subject of more general interest is presented by the assignment based upon the exception to the language in which the trial court instructed the jury touching the use to be made

by them of the view of the premises, which, in accordance with the requirement of the statute, had been had. What the court said upon this point was as follows:

"You have listened to all the evidence in this case, but you may use your own judgment in connection with the testimony that is before you. The whole question is a question of opinion, and the very object in sending you to look at this property was to enable you to form your own opinion as to the question which you are now called upon to decide, giving due consideration, of course, to the evidence which has been presented, and giving it such weight as you think it is entitled to. But nevertheless, beyond that, you have a right to use your own judgment in connection with the testimony, and say what you think the landowners ought to have for the value of the strip taken and the cost of restoring their plant on some other part of the property."

On the part of the plaintiff in error it was insisted that by this charge the jury were instructed that they might "bring in a verdict in accordance with their own opinions, irrespective of the evidence." The defendant in error, on the other hand, contends that the jury was not instructed to give any such probative force to their view independently of or without due regard to the evidence, but that they were, on the contrary, expressly told to use their view in forming their judgment of the evidence and in reaching an opinion with reference thereto.

We think that the latter is the fair interpretation to be put upon the language in question, and that the trial judge did not fall into the error imputed to him by the former construction of his charge. Thus interpreted the instruction was a proper one. The view of the premises in condemnation cases is made not under the thirty-first section of the Jury act, but under the express direction of the Condemnation act. *Pamph. L.* 1900, *p.* 79. Considering the radical differences that exist between the complex issues submitted to ordinary trial juries and the single question raised upon the appeal in condemnation cases, it may well be doubted whether the stringent rule laid down as to the limited function of an ordinary jury of

view is at all applicable to condemnation proceedings.• Speaking for myself, I think that it is not, and in many jurisdictions the distinction has been observed and acted upon. It is not, however, necessary in the present case to lay any especial emphasis on this distinction, for the reason that the charge under review does not, when reasonably interpreted, give any undue weight or latitude to the view that, under the statute, the jury is expressly required to make. In effect the jury were told that they might make use of their view of the premises in forming their judgment of the testimony and in reaching an opinion upon its consideration, and that their opinion upon the questions they were to decide should be based upon the testimony as thus understood by them and applied to what they had seen. This, I think, is a correct charge. If the jury may not make this use of their view, it is impossible for me to conceive of any reason for the imperative requirement of the statute that a view must be had. The circumstance that the jury's judgment of the testimony may in some instances be modified, and in extreme instances perhaps controlled, by the result of their view, instead of militating against the construction contended for, is the strongest reason for its adoption, for it is admitted on all sides that one of the legitimate uses of a view is that the jury may understand the testimony. This being so, it may well follow, as to some testimony, that to understand it is to discredit it, while, as to other testimony, to understand it is to accept it even in the face of contradiction or denial. For instance, if the testimony were that a building was of insignificant size and in a tumble-down condition, and the jury, upon viewing the building, saw that it was of large dimensions and in perfect repair, the testimony that contradicted the jury's observation would go for nothing, not because it had been overpowered by illicit evidence, but simply because it was understood by the jury for what it was worth. Instances may be multiplied in which the jury might properly use its view to check up the testimony adduced by the parties, without any infringement by the jury of the rule that prohibits the importation into the case of outside, or even of inside, information through some other

channel than that recognized by the law. The language of the charge in the present case is entirely consistent with this legitimate use by the jury of its view of the premises, and can only by the most strained construction be held to do violence to it. In what is thus said it must not be inferred that the Condemnation act may not be subject to an even broader construction of its requirement for a view of the premises by the jury.

The case of *De Gray* v. *New York and New Jersey Telephone Co., 39 Vroom* 454, relied upon by the plaintiff in error, is entirely without application. That case was not at all concerned with the question of a view. Indeed, neither the word nor the subject is once mentioned by Mr. Justice Fort in the opinion delivered by him in the Supreme Court. What that case held was that "the experiences of the jurors" as to whether telephone poles detracted from the market value of abutting land was an extrajudicial and improper means of arriving at a verdict. But obviously a decision upon that point can have no bearing upon a view that is expressly required by a statutory proceeding.

A discriminating and comprehensive statement of judicial decision upon this subject is contained in 15 *Cyc.* 880, *sub-tit.* "*Eminent Domain*," and a similarly instructive summary will be found under the same caption in 7 *Encycl. Pl. & Pr.* 581.

Our conclusion is that the points relied upon by the plaintiff in error direct our attention to no ground for the reversal of the judgment before us, which is therefore affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 10.

*For reversal*—None.