MARY McANDREWS *v.* ROY H. LEONARD.

Special Term at Rutland, November, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK and BUTLER, JJ.

Opinion filed October 6, 1926.

*Evidence—Error in Admission of Evidence Cured by Charge—Witnesses—Cross-examination To Show Interest in Subject-Matter—Presumption as to Continuance of Relation of Attorney and Client—Necessity of Saving Exception to Claimed Error—Examination of Injured Skull by Jury—View of Evidence on Motion for Directed Verdict—Corroboration of Evidence as to Speed—Contributory Negligence—Jury Question—Condition or Intervening Cause of Negligence—Negligence of Driver of Automobile Not Imputable to Guest—Degree of Care Required of Agent Driving Car for Owner—Guest Not Bound To Anticipate Negligence of Driver—Comparative Watchfulness Required of Driver and Guest—Presumption as to Exercise of Reasonable Care—Guest Being Asleep not Negligence as Matter of Law—Measure of Care Required of Guest—Duty Imposed on Driver of Car by Statute—G. L. 4668—"Gross Negligence" Not Separate Division of Negligence—Driver's Liability to Guest Not Limited to Gross Negligence—Instruction Re Prudent Man Rule.*

1.  In action of tort for injuries received in automobile collision, error, if any, in admitting evidence as to statements claimed

to have been made by defendant as to how he thought accident might have happened, and who was to blame therefore, *held* not to constitute reversible error under Supreme Court rule 7, where court, at defendant's request, instructed jury that such statements were not evidence as to how accident happened, or that defendant was to blame therefor, and could not be considered for those purposes, but merely as expressions of opinion, thereby taking from jury all material evidentiary force of such statements.

2. Where an attorney, called as witness for defendant, testified as to interviews had with plaintiff, and as to statement obtained by him from her and read and signed by her, concerning accident, cross-examination to show relation of witness as attorney to insurance company in which owner of automobile was insured, *held* proper, as showing his interest in subject-matter when taking statement and having interviews.

3. Relation of attorney and client, between witness and insurance company which had insured owner of automobile involved in accident, respecting the particular subject-matter, having been established as existing when attorney took plaintiff's statement prior to trial, is presumed to continue at time of trial, nothing being shown to contrary.

4. Supreme Court will not consider claimed error in admission of testimony, though briefed, where no exception thereto was taken below.

5. In action of tort for personal injuries where defendant's expert witness had testified that callus had formed in a hole made by trepanning plaintiff's fractured skull, the result of injury in an automobile collision, and that such callus was as hard as the bone surrounding it, *held* that court did not err in permitting jury to feel such parts when pointed out by plaintiff's doctor, to determine whether substance filling hole was as hard as surrounding bone or softer, such examination not requiring special knowledge or skill; and they had a right to base their verdict on such examination considered with all evidence in case.

6. On defendant's motion for directed verdict, evidence must be viewed in light most favorable to plaintiff.

7. In disposing of such motion, court looks at tendency of evidence, not at its weight.

8. In action of tort for personal injuries received in an automobile

collision, evidence that automobile driven by defendant, in attempting to pass another car being driven in same direction, ran against electric light pole, in or near ditch on left-hand side of road, with sufficient force to break pole, and throwing occupants of car therefrom, and continued to run 50 feet further before stopping, *held* to corroborate testimony of witness that car was traveling from 30 to 45 miles per hour.

9. In such action, evidence *held* to make jury question, under proper instructions from court, whether defendant in undertaking to pass car going in same direction had operated his car with degree of care as to speed required by G. L. 4705, subd. IV, in circumstances of case.

10. In such action, where defendant attempted to pass car going in same direction, piles of gravel or sand on edge of road, if constituting an intervening cause of accident, *held* a condition upon or through which negligent act of defendant operated to produce injurious result, making him liable to guest injured in accident, if case was otherwise established.

11. Negligence of automobile driver is not imputable to invited guest, who has no control of car or its management.

12. In action of tort for personal injuries received in automobile collision, defendant who was driving car at request of owner was latter's agent, and had same degree of care and responsibility to one riding therein as invited guest that his principal would have had if personally operating car.

13. In such action, where accident occurred in evening, after dark, while driver of automobile was attempting to pass car going in same direction, and while plaintiff was asleep on rear seat, plaintiff, having no reason to suspect any negligence, or want of due care by driver as required by G. L. 4705, *held* not bound to anticipate it.

14. Guest riding in rear seat of automobile is not called upon to exercise same degree of watchfulness as driver, to see that speed of car is kept within limits fixed by statute.

15. In action of tort for personal injuries received by guest in automobile when defendant, its driver, attempted to pass another car going in same direction, driver is presumed to have operated his car with reasonable care prior to attempt to pass, nothing appearing to contrary.

16. In such case that plaintiff, riding as guest in rear seat of automobile, was asleep when accident happened *held* not to show lack

of due care as matter of law, but is a fact to be considered on question of contributory negligence.

17. On question of contributory negligence acts and omissions of one riding in automobile as guest are measured by what a careful and prudent person would have done in same situation.

18. Under G. L. 4668, 4697, and 4705, subd. IV, driver of automobile has duty of exercising care and prudence that a careful and prudent man would exercise in same circumstances.

19. Definition in G. L. 4668, of terms "reasonable care," "due care," and terms of like import, in relation to operator of motor vehicles, as "such care as a reasonably cautious and prudent person would have used under the same or similar circumstances," has same meaning as expression, "the care and prudence that a careful and prudent man would exercise in the same circumstances."

20. Term "gross negligence," *held* to form no separate division of negligence.

21. In action of tort for personal injuries received in automobile collision by one riding therein as guest, *held* that liability of driver for negligence is not confined merely to gross negligence.

22. In such action, instruction that it was duty of defendant to use care and prudence of a prudent man in view of all circumstances of particular case, that is, what such a man would do and would foresee under such circumstances, *held* to explain sufficiently meaning of expressions, "a prudent man under like circumstances."

ACTION OF TORT. Plea, general denial. Trial by jury at the March Term, 1925, Rutland County, *Thompson,* J., presiding. Verdict and judgment for plaintiff. The defendant excepted. *Affirmed.*

*Webber & Leamy* for the defendant.

*Jones & Jones* for the plaintiff.

STATEMENT BY REPORTER. This is an action of tort to recover for personal injuries received by plaintiff in an automobile accident. At the time of injury plaintiff was riding in the automobile as the invited guest of its owner. The latter occupied

the center of the rear seat of car, plaintiff sat on the same seat to his right, and one Lee K. Robinson occupied the same seat to the owner's left. The defendant herein was driving the car at the request of the owner. The accident occurred when the driver attempted to pass another car on its left, going in the same direction, at what plaintiff claimed was an excessive speed and in a careless and negligent manner. While attempting to pass, the automobile in which plaintiff was riding went off the road into the ditch on the left-hand side of road, proceeded some distance therein, struck an electric light pole, and occupants of car were thrown therefrom and plaintiff injured. Some piles of sand located on the left of highway were claimed by defendant to have been an intervening cause of the accident. A companion case, *Robinson* v. *Leonard*, growing out of the same accident, and decided by Supreme Court at the same term as instant case is reported in 100 Vt. 1, and in 134 Atl. 706.

WATSON, C. J.  Lee K. Robinson, the plaintiff in the companion case mentioned in the foregoing statement, arising out of the same accident, was called as plaintiff's first witness in her opening case. He testified that after the accident, while he was in the Rutland Hospital, he and the defendant occupied adjoining beds and that they discussed the accident, and that the latter then told the witness "how he thought it might have happened." The witness then being asked what the defendant said about that, objection was made for immateriality, and also, particularly, for that the witness had not said that defendant stated how the accident happened, but only how he thought it might have happened. Subject to exception on the grounds stated, the witness answered: "He said, he was, he couldn't see how it did happen unless he must have been running too fast and misjudged his distance, very sorry that it happened."

Miss Alba Franzoni, another occupant of the car with the plaintiff and in which the latter was riding at the time of the accident in question, being called by the latter as a witness, testified in chief to a conversation had by her and the plantiff with the defendant in December following and after the plaintiff got out of the hospital. The witness was asked to tell what defendant then said about the accident and, subject to exception on the grounds of incompetency, irrelevancy, immaterialty, and for that the question called for a conclusion, not a statement of what hap-

pened, she answered: "He said he thought he was to blame."

The plaintiff, testifying in her own behalf, subject to like objection and exception, gave testimony regarding the same conversation related by the last witness as had by them and the defendant, and gave substantially the same answer as to what defendant then said about the accident.

[1] Respecting the foregoing statements of defendant, testified to by Robinson and by Miss Franzoni and the plaintiff, defendant requested the court to charge, and it did charge, that if the jury should find the statements were so made to Robinson, and to Miss Franzoni and the plaintiff, such statements to Robinson were not evidence as to how the accident happened, and could not be considered for that purpose; and that such statement to Miss Franzoni and the plaintiff was not evidence that defendant was to blame for the accident, and could not be so considered.

This charge, given at defendant's request, took from the consideration of the jury all the material evidentiary force those statements ever had, or were likely to have in the minds of the jury. But the charge went to the extent of instructing the jury that the statements were not of fact but only expressions of opinion by defendant as to how in his judgment the accident might have happened, and should be considered only as such in arriving at their verdict. The statements being thus limited by specific instruction to the jury, we cannot believe that the error in admitting them in evidence in the first instance, if it be error, has injuriously affected the rights of the defendant. In this respect, therefore, reversible error does not appear. Supreme Court rule 7.

Leonard F. Wing, an attorney at law of Rutland, called as a witness by defendant, testified in chief to having had several talks with the plaintiff on different occasions at his office after the accident in question; that on one such occasion the questions he asked her and her answers thereto touching the accident were taken down in shorthand and afterwards written out on paper; that after being so written out plaintiff read them over and signed the same in the presence of the witness. The plaintiff testified in her own behalf and, in her cross-examination, was shown the paper just mentioned and asked if the signature at the end of it was her signature. She answered that it was. She also testified that the letters "M. E. M." on each of the first five pages of the paper were her signature of her initials; that she re-

membered having talked with Mr. Wing several times about the
matter, but when asked if she signed a certain statement with
the answer in it (called to her attention on the paper) "Yes, we
thought he (driver) was going slow, we would never get home we
thought," she answered that she did not remember. The paper
showed other questions asked her and answers given by her to
the effect that the driver did not drive fast, that she did not think
Leonard (defendant) was to blame, and the like, but in answers
to questions whether she was asked such questions and so
answered, her several answers were that she did not remember,
that she did not know, and the like; that she did not remember
putting her name to the paper. The witness Wing, being cross-
examined, was asked for whom he appeared at the time he took
the plaintiff's said statement and, subject to exception on the
ground that it was incompetent, irrelevant, and immaterial, said
that he appeared for Franzoni as far as the litigation was con-
cerned. On being asked by whom he was instructed to see and
interview Miss McAndrews (plaintiff), subject to exception on
the same ground, the witness answered, "By some official of the
London Guarantee & Accident Company, Limited." Being
asked if he then had some interest in the accident, subject to a
like exception, he answered that he did in the subject-matter of
it, as attorney for the London Guarantee & Accident Company,
Limited, which was an insurance company in which Franzoni
was insured.

[2, 3] The defendant relies upon the exceptions so saved
as showing error. But we think the examination showing the re-
lation of the witness to the insurance company was proper. It
only went to the extent of finding out his full interest in the
subject-matter when taking the statement of the plaintiff and
having subsequent interviews with her. *Raymond's Admx.* v.
*Rutland Ry. Light & Power Co.*, 90 Vt. 373, 98 Atl. 909;
*Vermont Farms Machine Co.* v. *Batchelder & Co.*, 68 Vt.
430, 35 Atl. 378. But defendant says there was no testi-
mony to show that Wing was attorney for the insurance
company at the time of the trial or during the litiga-
tion. It was not essential that there should be testimony so
showing; for the relation of attorney and client between the
witness and the company, respecting the particular subject-
matter, being established by proof as of the previous times men-
tioned, there was a presumption in law that such relation was

continuing at the time of the trial, nothing being shown to the contrary. *Trask* v. *Karrick*, 87 Vt. 451, 89 Atl. 472; 1 Greenl. Ev. (14th ed.) § 41. Such presumption has been held to obtain in the relation of attorney and client. *Southard* v. *Nelson*, 43 Mo. App. 210.

[4] Similar objections were made by defendant to testimony of the same general character given by the witness Charles E. Novak concerning his employment by the said insurance company, and the question is briefed; but as no exception was saved to the rulings made in that connection, the matter is given no consideration.

It appeared that as a result of the accident there was a depressed fracture of the plaintiff's skull, causing pressure on the brain, by reason of which a surgical operation technically known as trepanning, was necessarily performed, removing a portion of the bone to relieve the brain from pressure. It further appeared that in performing this operation a circular piece of bone, probably half an inch in diameter, was cut out of the top of the skull on the left side, making and leaving a hole through the bone and over the brain of that size. Dr. Ray E. Smith, a physician and surgeon, was called by plaintiff as an expert witness, and testified that he examined the plaintiff on March 23 (about a week before testifying), giving her a general examination and more in particular. relative to her skull and her mental condition. He testified to finding cracks in and some through the skull itself, extending somewhere about the point of the trepanning operation; that the cracks were filled in, not with bone which is a hard rather unyielding substance, but with fibrous tissue which is soft and stringy, never becoming bone; that the fibrous tissue filled in the hole and covered it up.

Defendant called as an expert witness Dr. Alberic H. Bellerose, a practicing physician in Rutland, who testified that he and Dr. Hammond had recently (March 29) examined the plaintiff, making a general physical examination that would have any special relation to her injury, and also examined the skull; that they first made an examination by their hands of the depression in the skull, and in that examination found that the hole, made by the trepanning, had filled in with something which, in his opinion, was "callus," describing callus as the next thing that forms in fractures, a bony substance that repairs the bone; that he felt there for the purpose of finding out whether there was

any pulsation, but found none, which meant to him that there was solid covering over the hole. In cross-examination the witness said that primary callus was soft, and permanent callus was hard, sometimes harder than bone itself; that the callus examined by him on the plaintiff's head, the day named, was hard, and in his opinion had become a bony substance. "Q. Well, then, doctor, you go by experience, that nine months have elapsed since this injury, that it must be, if nature has performed its function, it must be as hard as the bones around it, is that what you mean? A. That is solid enough, yes that is what my opinion, that is my opinion."

In view of the foregoing testimony given by Dr. Bellerose with reference to the examination he made of the plaintiff at the point where the bone was taken out of her skull, and his statement that callus had formed there that was as hard as the bone surrounding it, the plaintiff, through her counsel, asked in rebuttal that the court, in its discretion, permit the witness, Dr. Smith, to demonstrate to the jury the plaintiff's head, by having the jurors themselves make examination by the touch of the finger on that part of her skull where the bone was taken out, and compare it in hardness with that part of the skull which remains. Defendant objected to such examination by the jurors, for that the question is one of fact requiring expert testimony, and not one that laymen can determine by the sense of touch; that the jury must determine it upon all the evidence, giving such weight as they think proper to the testimony of the experts on the subject.

The court inquired of Dr. Smith whether it was a matter that could be ascertained by a layman by feeling of the skull. To this question the doctor answered that he thought it could be. Thereupon, subject to exception by defendant, the court ruled permitting such examination, saying "the doctor can point out the spot, where it is." Counsel for defendant, Mr. Webber, said he understood that all the doctor was to do was "to point out the place and let the jurymen feel of it." The court said, "Yes." Webber, "I suppose Dr. Smith understands all he is to point out?" To this the doctor said he was "simply pointing to the firm portion of the skull, then the depressed portion in the back."

While the record does not state that such examination was in fact made by the jurors, we think it is fairly inferable from

what is there said, and we so treat it in deciding the question presented by the exception.

[5]   It should be borne in mind that the particular examination the jurors were thus permitted to make was not technical in nature, nor was it one requiring special knowledge or skill.   It was not for the purpose of ascertaining the kind of substance that had filled into the hole in the skull, made by the trepanning operation, that is, whether it was fibrous tissue as the evidence on the part of the plaintiff tended to show, or callus as the evidence on the part of the defendant tended to show; but it was to examine by the touch of the finger, the substance so filled in, the spot to be pointed out to them by plaintiff's expert witness, Dr. Smith, to see whether the substance with which the hole had become filled, was as hard as the surrounding bone or was softer.   Its quality in this respect was an important question; for the harder the substance was, until it equalled in such respect the normality of the surrounding bone, the greater was the resulting protection to the part of the brain covered by it.

The verdict, however, could not be based exclusively on the knowledge so acquired.   But the jury had a right to base their verdict upon such examination together with all the evidence in the case.   *Hinners* v. *Edgewater & Ft. L. R. Co.,* 75 N. J. Law, 514, 69 Atl. 161; *Hiller* v. *Johnson,* 162 Wis. 19, 154 N. W. 845; *Sampson* v. *St. Louis, etc., R. R. Co.,* 156 Mo. App. 419, 138 S. W. 98; *Southern Ry. Co.* v. *Brock,* 132 Ga. 858, 64 S. E. 1083; *McGar* v. *Bristol,* 71 Conn. 652, 42 Atl. 1000; *Culbertson & B. Packing Co.* v. *Chicago,* 111 Ill. 651; *Maywood Co.* v. *Maywood,* 140 Ill. 216, 29 N. E. 704; *Seaverns* v. *Lischinski,* 181 Ill. 358, 54 N. E. 1043; *Shepherd* v. *Camden,* 82 Me. 535, 20 Atl. 91; *Blancoe* v. *Choctaw O. & W. R. R. Co.,* 16 Okl. 286, 83 Pac. 903, 4. L. R. A. (N. S.) 890, 8 Ann. Cas. 689.   The exception is without force.

At the close of the evidence defendant moved for a directed verdict on two grounds (stated in condensed form):   (a) No actionable negligence shown; (b) failure to show plaintiff's freedom from contributory negligence.   The motion was overruled and exception saved.

The plaintiff's case is based upon the alleged excessive rate of speed of the car as driven by defendant, as the proximate cause of the accident, and in disposing of this exception we confine our examination of the evidence accordingly.

[6]   The evidence (viewed as it must be in the light most favorable to the plaintiff) tended to show that on the day of the accident (August 3, 1924) the car driven by defendant left Camp Governor Proctor about six o'clock in the evening, bound for Rutland; that the car was owned by Attilio Franzoni who was one of the occupants of it at the time of the accident, he being then riding in the center of the rear seat, and with him were riding on the same seat, the plaintiff at his right, and Lee K. Robinson, at his left; that for a week preceding and on the day of the accident the plaintiff was a guest of the Franzoni girls, Alba and Mary, at their home in Rutland, and on that day Attilio Franzoni invited her and his two sisters, Alba and Mary, to go with him to Camp Governor Proctor, and accepting this invitation the plaintiff was riding as such invitee on their way back from the camp to Rutland at the time of the accident; that in the morning of that day Attilio Franzoni drove his car in which they rode from the Franzoni home to the camp, and at his request the defendant drove the car on the return trip and was so driving it when the accident in question occurred in the town of Rutland, about four miles north of Rutland City (and hereafter, for convenience, the car will be referred to as defendant's) ; that at the time of the accident some work was being done on the road over which they passed in said town, and one application of tarvia had then been made along the central portion of the traveled part between O. J. Maigne's farm (which is about half to two-thirds of a mile north of the place of the accident) and Cheney Hill, so-called, and a danger signal had been placed at the line between the towns of Pittsford and Rutland; that the part covered with tarvia was from sixteen to eighteen feet wide, and between the tarvia and the edge of the road on each side there was a strip about two feet wide covered with gravel, practically as level as the part having tarvia on it, and could be used for traffic if necessary; that in preparing for the application of tarvia piles of sand were put along on the shoulder of the road just off the tarvia, ten or twelve feet apart, from which piles sand was used to put on the tarvia already applied, and the piles, each still containing about half a bushel of sand and being four to six inches high, were left there for use in connection with the second application of tarvia yet to be made; that some distance north of the place of the accident, the defendant undertook with his car to pass a Ford car going in the

same direction, but not succeeding in so doing, was again attempting to pass the same car when the accident occurred; that in the latter attempt the defendant speeded up his car to go by the Ford car, and went over the side of the traveled road into the ditch on the left-hand or east side of the road; that the speed of defendant's car in making this attempt was from thirty to forty-five miles an hour; that after the car went went into the ditch, it ran along fifteen or twenty feet in the ditch and struck an electric light pole, which was from fourteen to sixteen inches in diameter next to the ground, broke the pole off six or seven feet from the ground, the car running about fifty feet further south before it stopped; that just before defendant started on such second attempt, he was traveling on the extreme right-hand portion of the tarvia, and though the Ford car was toward the center of the road, there was plenty of room to pass to the left of it and still keep on the tarvia; that he turned to the left at a point "right around a hundred feet back (north) from the pole," and left the tarvia about fifty or sixty feet from the pole; that as his car, bearing gradually toward the east, turned to the left-hand side of and in part off the tarvia, it went through some of the piles of sand and lurched toward the ditch.

[7, 8] It is argued that the testimony of the witness Robinson to the effect that the speed of defendant's car in then making the attempt to pass the other car was from thirty to forty-five miles an hour, should be disregarded as unworthy of belief, in view of the testimony of the other witnesses on the question of speed, but in disposing of this motion for a directed verdict the court looks at the tendency of the evidence, not at its weight. However, the fact that the car ran against the electric light pole of the size, soundness, etc., with sufficient force to break it off as shown, that the car continued to run for the further distance it did before stopping, that the persons in the car were thrown therefrom as and for the distances they were by the impact of the car in striking the pole, were circumstances of no little force as evidence tending to corroborate Robinson's testimony as to the speed of the car.

[9] We think the evidence to which reference has been made tended to show that at the time in question, in undertaking to pass the other automobile at such excessive speed, the defendant did not exercise due care within the meaning of G. L. 4705, subdivision IV; and that on the evidence, under proper instruc-

tions from the court, it was for the jury to decide whether he was then operating his car with the degree of care required by law in the circumstances of the case. *Bombard* v. *Newton*, 94 Vt. 354, 111 Atl. 510, 11 A. L. R. 1402. It is contended, however, that such negligent operation, if found, did not constitute the proximate cause of the accident, and so is not actionable. In this connection it is urged that the proximate cause was the car getting into the gravel or sand piles.

[10]   As already seen the piles of gravel or sand were outside that part of the road covered with tarvia, were previously rightly placed there for use in connection with the tarvia when put on, had been partly so used at the time of the accident, the remaining parts being left there for such use when the second application of tarvia should thereafter be made. If such piles so left constituted an intervening cause of the accident, they were in reality only a condition upon or through which the negligent act of the defendant operated to produce the injurious result, and he will be held liable, if the case be otherwise established. *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149, 46 S. E. 366, 63 L. R. A. 896, 102 A. S. R. 941, 1 Ann. Cas. 225, and note; *McClure* v. *Hoopeston Gas, etc., Co.*, 303 Ill. 89, 135 N. E. 43, 25 A. L. R. 250; *Ft. Worth, etc., Ry. Co.* v. *Smithers* (Tex. Civ. App.), 228 S. W. 637; 22 R. C. L. 134.

[11, 12]   The negligence of the driver was not imputable to the plaintiff. She had no control of the car nor of its management. The relation of master and servant, or of principal and agent, or of being engaged in the joint prosecution of a common purpose, did not exist between them. In driving the car on the occasion in question, the defendant was the agent of Attilio Franzoni, its owner, at whose request he was driving it, and he will be held to the same degree of care and responsibility to the plaintiff that his principal would have been had he personally been operating the car and the same accident happened in other respects under the same circumstances. *Brown* v. *Lent*, 20 Vt. 529.

[13-17]   This brings us to the consideration of the second ground of the motion, namely, the alleged failure of the plaintiff to show her freedom from contributory negligence. The evidence tended to show that the accident occurred about 8:35 o'clock in the evening, it then being dark; that the road for fifteen or sixteen hundred feet along there was straight, smooth,

and in good condition; that at and from the particular time when the second attempt to pass the Ford car was made by defendant's increasing the speed of his car and turning it diagonally to the left for such purpose until the accident in fact took place, the plaintiff was sleeping in her seat and consequently was unaware of such increase of speed, or of the car's being run so far in the diagonal direction as to be in the least off the part of the road covered with tarvia, which part so covered, as before observed, afforded the defendant plenty of room to pass to the left of the Ford car and still keep on the tarvia. Excessive speed of defendant's car being the proximate cause of the accident, the negligence upon which this action is based and maintained was solely the defendant's failure to exercise due care as required by statute (G. L. 4705) in attempting to pass the Ford car. The plaintiff had no reason to suspect such negligence or want of due care on the part of the driver, and she was not bound to anticipate it. *Lefebvre's Admr.* v. *Central Vt. Ry. Co.*, 97 Vt. 342, 123 Atl. 211. She was not called upon to exercise the same degree of watchfulness as was the driver to observe ahead, and to see that the speed of the car be kept within the limits fixed by statute. Nothing appearing to the contrary, it is to be presumed that up to the time of the second attempt to pass the Ford car the defendant was operating his car with reasonable care. The plaintiff was riding on the rear seat away from the driver and was without opportunity to discover the excessive speed of the car at the latter time, and had no reason to apprehend danger, even if not asleep, before the car went into the ditch and hit the pole to her injury and unconsciousness. It is said by defendant that the evidence showed she was asleep in her seat when the accident happened, doing nothing to look out for herself. True, such in effect was the evidence; but it cannot be said as matter of law that this was an act by her not in the exercise of the requisite degree of care. Nor was the fact of her being asleep necessarily controlling on the question of contributory negligence. It was but one of the several facts and circumstances in the case to be considered in that connection. The plaintiff's acts and omissions to act in this respect were to be measured by what a careful and prudent person would have done in the same situation, and it was for the jury to determine. *Benedict* v. *Union Agricultural Society*, 74 Vt. 91, 52 Atl. 110.

The case of *Weidlich* v. *New York, N. H. & H. R. R. Co.*, 93

Conn. 438, 106 Atl. 323, is much in point.   The court there said:
"The defendant argues at length that the plaintiff offered no
proof to show that his intestate used any care whatsoever in ap-
proaching this crossing, nothing to indicate whether he was then
dead or alive, asleep or awake.   The intestate was seen a few
moments before the accident, and a short distance from the cross-
ing, seated on the rear seat of the closed automobile.   If he had
been asleep, or reading a book, or engrossed in talk with another
than the driver, or in deep thought, he would not have been, be-
cause of this, negligent.   Ordinary experience instances this as
not infrequently the conduct of the ordinarily prudent person
when riding as a guest on the rear seat of an automobile."

The motion for a directed verdict was properly overruled.

Defendant saved exceptions to the charge and to the refusal
to charge as requested, as to the degree of care required by law
of the defendant as driver of the car in which the plaintiff was
riding at the time of the accident, she then being an invited guest
gratis of Franzoni, the owner of the car, who was also then rid-
ing therein.   Defendant treats these exceptions as raising the
one question of the degree of care required of him, and we treat
them accordingly.

[18, 19]   Chapter 198 of the General Laws is entitled
"Regulation of Automobiles and Motor Vehicles," and includes
sections 4667 to 4722, both inclusive.

By G. L. 4697, "An automobile or motor vehicle shall not
be run on a public highway, * * * * in a careless or negligent
manner.   Except as otherwise provided, if a person operates an
automobile or a motor vehicle at a rate of speed exceeding twenty-
five miles an hour outside a city or incorporated village, * * * it
shall be *prima facie* evidence that the automobile or motor
vehicle was operated carelessly or negligently."

By G. L. 4705, subd. IV, "A vehicle overtaking another
vehicle going in the same direction shall pass to the left of the
vehicle so overtaken, but in so doing shall exercise due care and
shall not pass to the left of the center of the highway unless the
way ahead is clear of approaching traffic, * * * *."

G. L. 4668 provides: "Wherever the terms 'reasonable
care,' 'due care' or terms of like import are used in this chapter
they shall be taken to mean such care as a reasonably cautious
and prudent person would have used under the same or similar
circumstances."

Although in defining the care which the defendant was required to exercise in passing or in attempting to pass the Ford car, the statute does not use the exact words of the more common and well-understood expression usually, but not always, adopted in stating the care required of one charged with negligence in the performance of some duty owed to the one so charging him, for personal injury, namely, the care and prudence that a careful and prudent man would exercise in the same circumstances, it means the same thing. *Parker* v. *Boston & Maine R. R.*, 84 Vt. 329, 79 Atl. 865. This Court has said that the expression "ordinary care and prudence," and the like, when rightly understood, means the same thing (*Folsom* v. *Underhill*, 36 Vt. 589; *Fassett* v. *Roxbury*, 55 Vt. 552; *Drown* v. *N. E. Tel. & Tel. Co.*, 81 Vt. 358, 70 Atl. 599). We have also said that " 'due care,' 'reasonable care,' and 'ordinary care' are convertible terms." Also that the words "ordinary and reasonable care" and "reasonable or ordinary care" are expressive of the same degree of care. *Wiley* v. *Rutland R. R. Co.*, 86 Vt. 504, 86 Atl. 808. In *Fassett* v. *Roxbury*, the court below defined the measure of care and prudence required by law of the plaintiff in that case as follows: "It is always incumbent upon the plaintiff that he should act as a prudent and cautious man would have acted in like circumstances * * *"—The court further saying to the jury: "Was there anything about this horse that required caution and prudence on the part of a prudent man in using it, and did the plaintiff exercise that caution and prudence in reference to making the crossing?" On review this Court said the trial court in that case laid down the true rule to be followed by the jury. The expression there used, "prudent and cautious man" varies from the expression used in the statute (G. L. 4668) only in the use of the word "reasonably" before the words "cautious and prudent person." The use of that word there in no wise changes the meaning or force or the other words with which it is so connected. We therefore hold that the expression in G. L. 4668 "such care as a reasonably cautious and prudent person would have used under the same or similar circumstances," has the same meaning as the expression "the care and prudence that a careful and prudent man would exercise in the same circumstances."

[20, 21] It follows, as has always been the law in this State, that the term "gross negligence" forms no separate divi-

sion or degree of negligence under our law, outside of bailments as to which we say nothing. See *Briggs* v. *Taylor,* 28 Vt. 180. It also follows that the contention of defendant that in the circumstances of this case, he is liable to the plaintiff only for gross negligence, if at all, is not sustained.

Nothing further need be said in disposing of all exceptions to the charge or omission to charge, based upon the theory that such a degree of negligence here obtains and is applicable to this case.

[22]     Exception was taken to the failure of the court to explain to the jury fully what is meant by the expression "a prudent man under like circumstances" in charging as to the care to be exercised by defendant. In this respect the court told the jury that it was the duty of the defendant to use the care and prudence of a prudent man in view of all the circumstances to avoid injuring the plaintiff, and that as applied to this case specifically more would be told the jury in a few moments. After a short paragraph, the court further charged that no certain and unbending rule as to what constitutes negligence can be established for all possible contingencies; that what may be prudent under some circumstances and at some times may be negligent under other circumstances and at other times; that the standard, which is an elastic one, is that of a prudent man— what such a man would do and would foresee under such circumstances as those in question in this case. With this explanation given, it is not perceptible that a jury of intelligent men could fail of a fair understanding of the meaning of the expression. The exception is without force. *Briggs* v. *Taylor, supra.*

Defendant excepted to the submission to the jury the question of damages by reason of the possibility of epilepsy, insanity, or paralysis occurring, on the ground that there was no evidence that it was reasonably certain. It is unnecessary to recite here the evidence on that particular question. We have examined the record carefully and think the evidence was sufficient to warrant the submission of the question. No exception was taken to the charge in this respect.

The motion to set aside the verdict was based on the grounds that (1) it was against the evidence, (2) it was contrary to law, and (3) it was excessive. In effect all these grounds have been disposed of except, perhaps, the third. As to that, defendant's brief says only that it "was excessive in law as it included dam-

ages for possible insanity, epilepsy and paralysis.'' But this is in effect disposed of under our holding that the question of such damages was a proper one for the jury. It being so, how the verdict can be excessive ''in law'' is not quite plain. The motion was properly overruled, and in so doing there was no abuse of discretion.

*Judgment affirmed.*

TAYLOR, J., sat at the hearing of this case, but by reason of his death did not take part in its decision.