Lea *et al. v.* Gentry (two cases).

(*Jackson,* April Term, 1934.)

Opinion filed July 14, 1934.

ALBERT A. WHITE and LAWRENCE B. HOWARD, both of Nashville, for plaintiffs in error.

JORDAN STOKES, of Nashville, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

These two suits, tried together, were brought to recover for personal injuries to Raymond Gentry, a 16 year old boy, received in an automobile accident. The minor was awarded $3,000, and his father, for medical expenses and loss of service, $2,000. The Court of Appeals affirmed the judgments. Petition for certiorari was

granted by this court and argument heard. The Court of Appeals thus states the pertinent facts:

"On August 13, 1931, Col. Luke Lea, Sr., and Luke Lea, Jr., were on trial in the court at Asheville, N. C. During the afternoon Col. Lea telephoned his son, the defendant, Percy W. Lea, at Nashville, and requested him to send to him, in Asheville, certain papers to be used in the trial, and stated that it was important to have the papers at the convening of court the next morning. Percy W. Lea was a young man of the age of twenty-three years.

"At this time Col. Luke Lea was president of the Tennessee Publishing Company, Luke Lea, Jr., vice-president and general manager, and Percy W. Lea, vice-president. A Miss Haggerty was secretary to Luke Lea, Jr. During the absence of Luke Lea, Jr., she acted as secretary to Percy W. Lea. However, the papers were the personal affairs of Col. Luke Lea and Luke Lea, Jr., and had no connection with the corporation.

"Percy W. Lea instructed Miss Haggerty to get the papers up for him and get somebody to take them to Asheville, driving his (Percy Lea's) car. Miss Haggerty made arrangements with H. B. Crump, an employee of the Publishing Company, a man of thirty years of age, to take the papers. It was suggested by somebody that he get somebody to accompany him.

"Crump called Percy Lea on the telephone and asked if it would be all right for him to ask Raymond Gentry to go with him, and Lea said that it would. Nothing was said to Percy Lea about young Gentry's doing any part of the driving, and in fact there was no agreement about it. Crump invited young Gentry, aged sixteen years, to accompany him, and told him the trip would not cost

him anything. The expenses of the trip were paid out of Col. Lea's account.

"Crump and young Gentry left Nashville at about eight o'clock in the evening. The distance from Nashville to Asheville, N. C., is about 335 miles, so it was necessary to drive all night. They alternated in driving. They reached Asheville at about seven or eight o'clock in the morning and went to the house occupied by Col. Lea, delivered the papers and were shown to their rooms. After breakfast they went to the Court House and listened to the trial until lunch time. After lunch, at about one or one-thirty P. M., they went to their rooms in the Lea home. Crump went to bed and probably slept a short while, but Gentry did not go to sleep. They were occupying adjoining rooms and talked to each other while they were lying down resting.

"They left Asheville at about 3 P. M. that afternoon, which would be 2 o'clock by Nashville time. Col. Lea gave Crump some papers and told him to deliver them at the Internal Revenue office in the Custom House in Nashville before 12 o'clock the next day (Saturday).

"At about eight o'clock they reached Knoxville. Gentry suggested that they spend the night there, but it was decided to drive on to Nashville. They began a system of one driving while the other slept. It was agreed that when one driver became sleepy he would wake up the other and let him take the wheel and drive.

"At McMinnville Crump took the wheel to drive and Gentry went to sleep. It was then about 12 o'clock. Crump had slept about an hour while Gentry drove. Crump says he was very sleepy when he began to drive and 'faintly' remembers McMinnville. The only thing he can recall about the trip from McMinnville to Wood-

bury was his intention to get some coffee in Woodbury to keep him awake. When he reached Woodbury there were no restaurants or other places open where he could get coffee. He decided to go on to Murfreesboro. He continued to drive, leaving Gentry asleep. He cannot recall anything that happened after he left Woodbury until the accident. About five miles west of Woodbury he was asleep and the car left the highway, ran over a little embankment and into a tree at the side of the road. The road at this point is a good, level road, and it was about one o'clock at night.

"As a result of the collision Raymond Gentry received serious and permanent injuries in and about his face and eyes. His face was driven with much force against some object in the car which crushed some of the bones in his nose, jaws and about the orbit of his eyes, which caused his teeth to fail to occlude, impaired his eyesight and marred his facial appearance."

■ ■ The question we conceive to be most seriously pressed on the petition to this court, and deserving of chief consideration, is with respect to the alleged contributory negligence of Gentry, or his assumption of risk, in voluntarily going to sleep under the circumstances and thus rendering himself incapable of giving heed to his own safety, particularly in view of his knowledge of the necessarily impaired physical vitality of the driver by loss of sleep.

We have no Tennessee decision passing on the question of contributory negligence of a guest in falling asleep in an automobile. Our case perhaps most nearly analogous on its facts is that of *Schwartz* v. *Johnson,* 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323, in which the plaintiff was denied a recovery as a matter of law

when the undisputed evidence showed that he had entered a car to ride with a driver known by him to be drunk.

Counsel for petitioner rely on the holding in that case to sustain the contention that contributory negligence, or assumption of risk, should be adjudged against plaintiff below *as a matter of law.*

A determinative distinction appears in this: In the case relied on, the proof showed that the guest was fully conscious that the driver with whom he was riding was intoxicated. The plaintiff entered the car knowing that it was to be operated by a drunken driver. It was his undisputed knowledge, actual consciousness, of this situation of peril which bound and condemned him, and which eliminated all issues of fact and called for the judgment of the court on the question of law. Here the proof does not show a consciousness on the part of Gentry, a knowledge on his part, with a consequent recognition of the peril, that the driver was or would be asleep. On the contrary, the evidence indicates that Gentry allowed himself to fall asleep with the understanding and in the contemplation that when and while he slept the driver, Crump, would stay awake. It was while awake that he was to drive. If and when necessary for him to sleep, an exchange would be made, and Gentry would be called upon to take the wheel. The arrangement contemplated provision against the contingency of peril incident to the driving of the car by either of the occupants when incapacitated by sleep.

It is plausibly argued, however, that the circumstances of the double trip as a whole—distance, time, loss of sleep, continued physical strain—were such as to have charged Gentry with knowledge of the probability of this

particular peril, of the likelihood that his companion would fall asleep at the wheel, just as he appears to have done, and that he should be held accountable for contributory negligence, or assumption of risk, because of what he should, with this knowledge, have reasonably anticipated. This is the proposition presented in this petition which has invoked most earnest consideration. However, just here lies the dividing line between what is for the court and what is for the jury to determine. As already suggested, the principle applied in *Schwartz* v. *Johnson, supra,* was that, when knowledge of the fact that the driver is intoxicated or otherwise incapacitated is indisputably shown to have been brought home to the guest, when there can be no dispute as to his consciousness of the peril inherent in such a situation, then a qustion of law only remains, and the question is one for the court. But, when actual consciousness of the peril is denied by the guest, when to convict him of knowledge of, and therefore acquiescence in, the disqualification of the driver at the time, surrounding facts, and circumstances must be considered, and their determinative weight passed on, when an issue as to what a reasonably prudent person of like age and experience and opportunities would have done or deduced or decided is presented, then the determination of that issue is for the jury. It can no longer be said that there is no room for the minds of reasonable men to differ, or to reach a different conclusion. In the instant case, viewing the facts and circumstances proven, it cannot be said that the minds of reasonable men might not differ. In fact, they have differed. The jury and trial judge and Court of Appeals have reached a conclusion against the de-

duction and conclusion of learned counsel for the defendant, petitioner here.

In this view, we must give recognition and application to the general rule thus well stated in the very recent work of Walter H. Anderson, An Automobile Accident Suit, p. 943: ''Evidence showing that the guest was asleep at the time of the accident does not establish contributory negligence *as a matter of law;* the question still remains for the determination of the jury as one of fact.'' (The significance of the limiting words we have italicized in this quotation should be kept in mind.) The author cites the following in support of his text:

*''Malone* v. *Clemow,* 111 Cal. App., 13, 295 P., 70; *Bushnell* v. *Bushnell,* 103 Conn., 583, 131 A., 432, 44 A. L. R., 785; *West* v. *Rosenberg,* 44 Ga. App., 211, 160 S. E., 808; *Howse* v. *Weinrich,* 133 Kan., 132, 298 P., 766; *Jesse* v. *Dunn,* 244 Ky., 615, 51 S. W. (2d), 918; *Salvas* v. *Cantin* (Me.), [85 N. H., 489], 160 A., 727; *Nelson* v. *Nygren,* 233 App. Div., 573, 253 N. Y. S., 539; *Parker* v. *Helfert,* 140 Misc., 905, 252 N. Y. S., 35; *Simrell* v. *Eschenbach,* 303 Pa., 156, 154 A., 369; *McAndrews* v. *Leonard,* 99 Vt., 512, 134 A., 710.

''See also for the minority rule, *Oppenhein* v. *Barkin,* 262 Mass., 281, 159 N. E., 628, 61 A. L. R., 1228.''

It will be observed that the states of California, Connecticut, Georgia, Kansas, Kentucky, Maine, New York, Pennsylvania, and Vermont are cited for the majority rule, and Massachusetts alone for the minority rule. Learned counsel for petitioner list, in addition to those cases above mentioned as supporting the majority rule, decisions by the courts of Alabama, Maryland, New Hampshire, Washington and Wisconsin. And it is plausibly argued that the Supreme Court of Massachusetts

has distinguished, if not departed from, its holding in *Oppenhein* v. *Barkin, supra,* in the later case of *Button* v. *Crowley,* 187 N. E., 615.

The Court of Appeals thus disposed of this question:

"(c) It is insisted that Gentry was guilty, as a matter of law, of contributory negligence in going to sleep. It cannot be said as a matter of law that Gentry was guilty of negligence directly contributing to the accident merely because he was asleep at the time it happened. Crump was an experienced driver and he had had about an hour's sleep when Gentry gave him the wheel at Mc-Minnville and had had several naps earlier in the evening. Gentry had no reason to anticipate that Crump would fall asleep. Hence he was not guilty of contributory negligence as a matter of law in going to sleep, and the question was one for the jury. 1 Berry on Automobiles (6 Ed.), secs. 638 and 684; *Dedman* v. *Dedman.* 155 Tenn., 241, 291 S. W. 449.

"Gentry had to exercise care for his own safety. But the passenger or guest may rely upon the assumption that the driver of the automobile will exercise proper care and caution unless the danger is obvious or is known to the passenger or guest. *Knoxville Ry. & Light Co.* v. *Vangilder,* 132 Tenn., 487, 178 S. W., 1117, L. R. A., 1916A, 1111; *Tenn. Central R. Co.* v. *Vanhoy,* 143 Tenn., 312, 226 S. W., 225; *Dedman* v. *Dedman, supra.* The fact that the guest in the automobile was asleep at the time of the accident did not alone render the guest contributorily negligent. *Howse* v. *Weinrich,* 298 P., 766, 133 Kan., 132; *McAndrews* v. *Leonard,* 99 Vt., 512, 134 A., 710.

"The questions whether Gentry was guilty of contributory negligence, and, whether it was the proximate

cause of the accident, were properly submitted to the jury, and the jury has decided in favor of the plaintiffs."

In *Dedman* v. *Dedman,* cited by the Court of Appeals, Chief Justice GREEN, after noting that our cases hold that a guest must exercise due care for his own safety, and that a guest may rely upon the assumption that the driver will exercise proper care, *"unless* the danger is obvious or is known to the passenger or guest," says, "In all the cases so far decided by this court, the question of the guest's contributory negligence has been held to be one for the jury." And, in line with views hereinbefore indicated, he said: "Comparing the respective contentions of the parties thus outlined, we are satisfied that reasonable men might differ as to whether the plaintiff acted with ordinary care under the circumstances disclosed—as to whether she conducted herself as a prudent person ordinarily would do. In this plight of the case, the question of her contributory negligence was one for the jury. *Roofing & Mfg. Co.* v. *Black,* 129 Tenn., 30, 164 S. W., 1183 [51 L. R. A. (N. S.) 340]."

He adds that "a reference to the text-books, where all the cases are discussed, convinces us that the matter of a guest's contributory negligence under such facts as here appear is a jury question," citing Huddy on Automobiles, section 823; Berry on Automobiles (3 Ed.), section 502; Blakemore's Ed. of Babbitt on the Law Applied to Motor Vehicles (3 Ed.), section 1622.

The distinctive principle is this: When the facts show without dispute that the guest was conscious of the peril inherent in the driver's condition or conduct, the court may adjudge contributory negligence as a matter of law; but where either (1) the evidence is in conflict as to the facts of the occurrence, or (2) where reasonable minds

may differ as to the effect of the undisputed facts of the situation disclosed on the consciousness or knowledge of the guest of the peril involved in the condition or conduct of the driver, then the question is one for the jury.

The case in hand falls within the second of these divisions of the rule.

Learned counsel for petitioner cite numerous holdings from other jurisdictions holding it to be contributory negligence for a guest to fall asleep, or otherwise to incapacitate himself for the exercise of ordinary care for his own safety. The limits of this opinion will not admit of a discussion of these cases, but our examination satisfies us that the great weight of authority is that the question is one for the jury, rather than the court. Very few, if any, of the decisions will, upon analysis, be found to be at variance with the statement herein made distinguishing the proper application of the rule. In this connection it should be noted, with reference to certain railroad crossing cases cited on the brief of petitioner, that in *Louisville & N. R. Co.* v. *Anderson,* 159 Tenn., 55, 15 S. W. (2d), 753, Mr. Justice Swiggart comments on a distinction recognized by our courts applicable to this class of cases, where the danger is so obvious.

The assignments of error presented by the petition raise other questions which we dispose of briefly.

██ (1) The evidence amply showed sufficient negligence of the driver, Crump, to take the case to the jury. No defect in the car or other excuse appearing, he was manifestly negligent in running it off the road.

██ (2) The evidence fails to show a case of joint enterprise. The mission was that of Crump, and Gentry accompanied him by invitation in the legal relation, we think, of guest.

(3) The preponderance of the evidence fails to show that Gentry was a fellow servant, but shows that, as above stated, he was an invited guest of the agent in charge of the car.

 (4) The evidence shows that Crump was the agent of defendant Lea in using Lea's car in performance of a mission for which he was chosen and delegated by Lea. We think the fact that another party, Lea's father, was the ultimate beneficiary of the mission is not determinative. The undertaking was that of defendant Lea, and the instrumentality used was his. He placed Crump in charge of his car, and had the right to direct and control his conduct.

 (5) The alleged errors in admission of testimony, consisting of a statement by Gentry that he was "a guest" and by Crump as to a custom of alternating in driving at night, were not of such materiality as to affect the result, even if technically errors.

All of these questions are discussed and correctly disposed of by the Court of Appeals. We find no error in the decree of that court, and the judgments are affirmed.