## Jesse v. Dunn.

(Decided June 21, 1932.)

614

H. B. KINSOLVING, JR., and GILBERT, PICKETT & KINSOLVING for appellant.

C. B. LATIMER, R. F. MATTHEWS and C. G. BARRICKMAN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

D. J. Jesse, who lived near Shelbyville, was operating two trucks for hire. On the morning of December 18, 1930, he received word from A. A. Mitchell, his agent, to send two trucks to Glasgow for the purpose of hauling tobacco to the Shelbyville market. Responding to the call, Mr. Jesse sent a truck to Barren county in charge of his driver Charley Mitchell. The other truck was fur-

nished by another party. On their arrival in Barren county, they were directed to go to the farms of Willie Martin and his brother, J. O. Martin. Carson Dunn was a tenant on the farm of J. O. Martin, and arrangements were made to transport his tobacco as well as that of his landlord. Dunn and Willie Martin accompanied the tobacco, and rode on the seat beside the driver, Charley Mitchell. Both Dunn and Martin say that on their arrival at Cave City the driver stopped to have his brakes fixed, saying that they were not working and holding the truck. The truck then proceeded to Louisville, where it stopped for about 30 minutes. On reaching a point a few miles west of Shelbyville, the truck come over a hill and started down the hill. Dunn had dropped off to sleep. According to Martin, he had been talking to the driver, who said that he knew the curves in the road and never got sleepy. The driver acted like he was getting drowsy when the truck suddenly whipped to the left of the road, and Martin said, "Look out." The driver jerked the truck back to the middle of the road, when it swung, hit the ditch and a telephone pole, and turned over on its side. According to Martin, it looked as if the driver were starting down the hill fast so he could make the next hill on high. Martin and the driver were not injured, but Dunn was pinned under the truck, and his hip was fractured. According to Dunn, the driver had told him to go to sleep, and he dozed off. The truck woke him up. It was then on the left side and practically out of the road. He could not tell whether he opened the door, or the door came open, it was done so quickly. Appellant's evidence was to the effect that the truck was in good condition when he started on the trip. Charley Mitchell did not stop at Cave City to have the brakes repaired, but merely to put some oil in, but the garage man said he did not need any. His brakes did not need adjusting. In going toward Shelbyville, Dunn was sleeping, and woke up when he holloed. The first thing he noticed, the front wheels cut around, and he said, "Boys, look out, she's gone." At that time he was going 20 or 25 miles an hour. He thought that little ball in the socket in the steering rod must have slipped out. This caused the car to veer around. He could not control the car. It was only a second after the steering wheels veered around until the truck had gone in the ditch. He was not dozing or sleeping at the time, and there was nothing that he could do to prevent the accident. Dunn opened

the door and tried to jump out. He was part of the way out of the cab when the car turned over.

It is first insisted that the evidence that Dunn was a passenger was not sufficient to take the question to the jury. Dunn testified as follows:

"17. Who made the trade about bringing the tobacco to Shelbyville, Carson? A. My landlord, I reckon, I didn't. . . .

"23. Tell the jury what that conversation was that you had with the truck driver or in his presence about your riding on that truck? A. The truck driver and myself and my landlord were loading this tobacco, my children was handing it up to me, I was standing at the side of the truck handing the tobacco up to my landlord and he was handing it to the truck driver, I asked the truck driver did me and my landlord get a trip to Shelbyville, he says 'yes,' 'you and your landlord are entitled to a trip on this truck to see after your tobacco,' my landlord spoke up and says, 'I have made the deal to that effect with him,' that is all I heard about that, and when they got ready to move out from there, got our tobacco loaded the road was soft and my son-in-law was there and we went out on the hard road and I went and got my shoes and got in the truck."

After stating that he made the arrangements with Charley Mitchell for hauling the tobacco, J. O. Martin, appellee's landlord, testified as follows:

"29. While you were loading the tobacco was there any conversation between Carson Dunn and you and Charley Mitchell, the truck driver as to who was coming to Shelbyville on the truck? A. Well, now, I was on the truck handing Mitchell the tobacco, and if I am not mistaken Carson says, of course, Carson was at the barn at the time we went down there, and Carson just made the remark to me, I believe it was or to the truck driver, may have been to the truck driver, I believe it was to the truck driver, 'could we go along with it' and he says 'sure.'

"30. Who says 'sure'? A. The truck driver.

"31. How much, if anything extra, were you to pay for the privilege of riding on the truck from that farm to Shelbyville? A. There was nothing said about that, the consideration was this, we would

let him carry our tobacco, we had no other way to get to Shelbyville only come with him, if we could come along together he could take our tobacco, that was the understanding of all of us.''

It is insisted that all the arrangements for hauling the tobacco had been made prior to the arrival of the truck, and that all the foregoing evidence shows is that Dunn asked permission to go along and the driver consented. Nowhere did A. A. Mitchell, the field man, testify that he and the shippers agreed on the terms of the contract. The only part that he took in the transaction was to receive orders over the phone for the trucks, to call up Mr. Jesse, and direct where the truck should go. The terms of the contract were agreed on by J. O. Martin, the landlord, and the driver of the truck, and clearly it was within the apparent scope of the authority of the driver to make the contract; he being in charge of the truck and the only person present representing his employer. Considered as a whole, we think the evidence of Dunn and his landlord was sufficient to make it a question for the jury whether, as a part of the contract, appellant, through his driver, undertook to carry Dunn to Shelbyville. If so, Dunn's relation to appellant was similar to that of a shipper, who, under a special arrangement, rides in a railroad stock car to look after stock, with the result that he was a passenger and entitled to the highest degree of care. Davis v. Chesapeake & Ohio R. Co., 122 Ky. 528, 92 S. W. 339, 29 Ky. Law Rep. 53, 5 L. R. A. (N. S.) 458, 121 Am. St. Rep. 487, 12 Ann. Cas. 723. It follows that the court did not err in submitting the question to the jury.

Appellant's principal insistence is that, as Dunn was asleep just prior to the accident, he was guilty of contributory negligence as a matter of law. In support of this position, appellant cites Oppenheim v. Barkin, 262 Mass. 281, 159 N. E. 628, 61 A. L. R. 1228, which holds that a guest in an automobile who goes to sleep on the seat, and intrusts himself entirely to the care of the driver, cannot hold the latter liable for injuries resulting from his negligently permitting the car to leave the road and collide with a post. There are two answers to the contention. In the first place, the evidence authorized a finding that Dunn was a passenger. If so, he had a right to assume that appellant and his driver would exercise the highest degree of care for his safety, and to intrust

himself to them, and we are not prepared to announce the novel rule that, if a passenger is asleep just before or at the time he is injured by reason of some defect in the conveyance, or the negligence of the driver, he is guilty of contributory negligence as a matter of law. In the next place, we are not prepared to say that the rule announced in the above case is invariably sound even as to a guest. Much depends on the character and circumstances of the accident. It hardly can be said that a guest who is asleep is guilty of contributory negligence as a matter of law, when it is doubtful even if he had been awake whether he could have done anything to prevent the accident. Whether the accident in this case was due to some defect in the truck, or to the fact that the driver say that he never went to sleep, and the driver had the truck, does not clearly appear. Dunn had heard the driver say that he never went to sleep, and the driver had told him to go to sleep. If, as a matter of fact, the driver was dozing just before the accident, and Dunn had been awake and had his eyes on the driver, there is room for the position that he might have ascertained that the driver was dozing and have warned him in time to prevent the accident. But, after all, the accident happened so suddenly, and the driver's dozing, if he did go to sleep, may have been so momentary, that the facts present only a mere possibility and not a certainty that Dunn, in the exercise of ordinary care, could have taken any steps to prevent the accident. Under the rule prevailing in this state, the contributory negligence of a guest injured while riding in an automobile is usually a question for the jury, Stephenson's Admx. v. Sharp's Exrs., 222 Ky. 496, 1 S. W. (2d) 957, and we find nothing in the facts of this case to take it out of the general rule.

Judgment affirmed.