Moody's Adm'r v. Commonwealth et al.
Moody v. Same.

(Decided Oct. 27, 1936.)

B. J. BETHURUM and L. L. WALKER for appellants.

B. M. VINCENT, Attorney General, BAILEY P. WOOTTON, former Attorney General, DAVID C. WALLS and J. W. JONES, Assistant Attorneys General, and GLADSTONE WESLEY for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two cases arose out of an automobile accident which occurred just within the city limits of Monticello, Ky., shortly after dark, September 3, 1932, when an automobile driven by Frank Newell ran into a barrier placed across the road by the state highway commission while the road was being repaired. The place where the accident occurred was on highway 90, leading from Burnside to Monticello. The state highway commission was repairing that part of the highway within the corporate limits of Monticello, and a detour, which turned to the right off highway 90 near the city limits, had been provided for the traveling public. Edith Moody was killed in the accident, and her sister, Eva Moody, was seriously injured. At its regular 1934 session, the General Assembly of Kentucky adopted resolutions authorizing Eva Moody and the administrator of the estate of Edith Moody to sue the commonwealth of Kentucky and the state highway commission for damages resulting from the accident caused by the carelessness and negligence of the agents and employees of the state highway commission. Chapters 563 and 564, Acts 1934. The two suits were instituted and, after the issues had been completed, they were tried together before a jury which returned a verdict in each case in favor of the defendants. Eva Moody and the adminis-

trator of the estate of Edith Moody have appealed. The two appeals have been consolidated and will be disposed of in one opinion.

It was alleged in each petition that the agents and employees of the state highway commission negligently and carelessly placed a barrier across highway 90 in Monticello, Ky., so that same obstructed travel on and over the highway, and that the automobile in which Edith Moody and Eva Moody were riding collided with this obstruction and turned over. In an amended petition it was alleged that the defendants negligently failed to have a guard to warn persons approaching the obstruction, and failed to have any other notice or warning of the danger thereof; that it was dark when the accident occurred, and the defendants failed to have sufficient lights to warn travelers using the highway of the obstruction. The answer traversed the averments of the petition, and pleaded contributory negligence. Practically the only grounds relied upon for reversal of the two judgments are alleged errors in the instructions.

A full understanding of appellants' contentions requires a brief statement of the facts. The barrier or obstruction referred to in the petitions consisted of a large rope stretched across the highway at a height of about 4 feet, tied to poles on each side of the road, and a wooden structure under the rope, referred to as a "saw horse." This structure was 8 or 10 feet long, made of shiplap with legs nailed to the ends. A red lantern was hanging from the rope at a point near the center of the road, and it was shown that it was lighted. Frank Newell, the driver of the car, admitted that he saw the lighted lantern, but testified that he thought it was the rear light of an automobile traveling in the same direction in which he was traveling, and that he attempted to pass it on the left and ran into the obstruction. There was evidence that the driver of the car applied the brakes 40 feet before he reached the barrier across the road, and that it traveled about 130 feet after striking and breaking the rope. The car was a Ford roadster, and six persons were in it at the time of the accident. All of them resided in or near Burnside, and they left Burnside about 7:30 p. m. intending to go to a motion picture theater in Monticello, a distance of approximately 20 miles. The occupants of the car stated that they traveled from Burnside to Monti-

cello at an average speed of 40 or 45 miles an hour, but that Newell slowed down the car as they approached Monticello and was traveling at a speed of about 25 miles when the accident occurred. A number of witnesses who lived in the immediate vicinity and who saw and heard the car when it crashed into the rope testified that it was traveling fast, and they fixed the rate of speed from 50 to 60 miles an hour. Some of these witnesses were introduced by the plaintiffs. Eva Moody was asked to state how the six passengers were sitting in the car, and she said:

> "Frank Newell was driving the car, my sister was sitting in the center, Dick Burton was on the right-hand side, and I was sitting on Dick Burton's knee. Joe Newell, a brother to Frank Newell, and Harold Newell, Frank's cousin, were riding in the rumble seat."

She and Frank Newell, the driver of the car, admitted that they saw the red light when they were some distance away, but they assumed it was the taillight of an automobile. They saw no other warning signs. The defendants proved that there was a sign on the side of the road 350 yards from the barrier, toward Burnside, marked "Slow." Farther down there was another sign marked, "Men Working," and 130 feet from the rope was a sign, "Road Under Construction." On the rope was a red lantern and also a large detour sign with a hand pointing to the right. The barrier was within the city, and 138 feet from the city limits where there was located a sign, 4 feet across, marked, "Speed Limits 20 Miles an Hour." Almost directly over the barrier was a street light which lighted a large area. The plaintiffs introduced evidence which tended to show that one or more of the signs, which had been placed along the side of the road, had been moved over against the fence. Frank Newell was an employee of the state highway department, and he admitted that he had been in Monticello a few days before the accident and knew that the street was being repaired.

In view of the convincing nature of the proof to the effect that ample safeguards had been provided by the defendants to protect travelers on the highway from injury and to notify them of the presence of the barrier, and that the car was traveling at an excessive rate of

speed, not only is the verdict fully sustained by the evidence, but it is the only defensible verdict that could have been returned.

A number of instructions were given, and it would unduly lengthen this opinion to copy them. Instruction A correctly told the jury that the defendants had authority to repair and improve state highway No. 90 running through Monticello, and to close the highway to the use of the traveling public by placing a cable across it while it was being improved. The court told the jury in instruction B that it was the duty of the defendants, in closing the highway, to use ordinary care to protect persons using it at night from injury by giving notice by the use of lights or "other means as was reasonably sufficient to warn the traveling public of the presence of the obstruction," and if they believed from the evidence that the defendants failed to use ordinary care to protect persons using the highway at night from injury, by giving such notice of the presence of the obstruction by the use of lights or other means reasonably sufficient to warn persons traveling on the highway of the presence of the obstruction, and that by reason of such failure the automobile in which plaintiff was riding ran against the obstruction thereby causing her injuries and she was at the time exercising ordinary care for her own safety, then they should find for the plaintiff. This instruction is criticized because the words "other means" were used and it was not strictly limited to the acts of negligence specified in the petition. If this was error, it was in favor of the plaintiffs, and against the defendants, since it permitted the jury to find that the defendants should have used other means to notify the traveling public of the presence of the obstruction in the highway than the ones specified in the petition. W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. (2d) 16, is cited, but in that case there was a verdict for the plaintiff, and it was held the instruction was prejudicial to the defendant, since it was not limited to the acts of negligence specified in the petition. Complaint is made of instruction C because it points out, as one of the acts of negligence, the fact that the plaintiff was riding on the front seat of the Ford roadster with three other persons. It is asserted there was no evidence on which to base this part of the instruction. In the answer it was alleged that the plaintiff was guilty of negligence in occupying the front seat of the car with three other

persons while it was being driven at a speed of more than 50 miles per hour. Newell testified that the three other persons on the front seat did not effect or interfere in any way with his driving, but it was for the jury to say whether or not plaintiff was guilty of contributory negligence in riding in the car without protest in the manner and at the speed disclosed by the evidence. Negligence of a driver of an automobile will not be imputed to a guest who exercises no control over the driver, but the guest must exercise that degree of care which surrounding circumstances require, and the circumstances may be such that his failure to exercise ordinary care for his own safety will constitute contributory negligence on his part. Jesse v. Dunn, 244 Ky. 613, 51 S. W. (2d) 918; Lexington Ice Co. v. Williams' Adm'r, 236 Ky. 318, 33 S. W. (2d) 14; Nashville, C. & St. L. Ry. Co. v. Byars, 233 Ky. 309, 25 S. W. (2d) 733; Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. (2d) 957. Instruction D defined the duties of the driver of the automobile, and it is insisted that the defendants' answer set forth the special acts of negligence of the driver, and that the instruction is broader than the pleading. The instruction required the driver to keep a lookout ahead, to operate his automobile at a rate of speed not exceeding 30 miles per hour, to have the same under control, and to exercise ordinary care to avoid collision with others. In addition to alleging that the driver of the automobile was negligently and carelessly driving the car at a rate of speed of more than 50 miles per hour within the corporate limits of Monticello at the time it was wrecked, paragraph 4 of the answer alleged that it was being driven without regard to the rights of other persons, vehicles, or things using or occupying the highway, and that the injury complained of was caused by the sole negligence of the driver of the car. This pleading was broad enough to include a violation of the duties set forth in the instruction. Instruction E is criticized because, as claimed, it authorized the jury to find for the defendants if they believed an adequate and sufficient detour had been provided for persons operating motor vehicles on the highway in an ordinarily careful and prudent manner. The instructions must be read as a whole, and when so read they are not susceptible of such construction. Instruction F was a general instruction on contributory negligence, and, while in some respects it was a repetition of

a former instruction, it was not, under the circumstances, prejudicially erroneous. It is not every error in an instruction that will authorize a reversal of the judgment. The error must be prejudicial.

We have carefully inspected the instructions, and though minor errors might be pointed out, we find none which could have misled the jury. Taken as a whole, they presented the issues with sufficient clarity and fairness to enable the jury to reach a correct verdict.

Some complaint is made of the introduction in evidence of an ordinance of the city of Monticello fixing the speed limit of automobiles within the city. It is argued that the ordinance was not competent in evidence, since it was not pleaded and no proof was introduced showing its publication, as required by section 3638 of the Kentucky Statutes. In no event was its introduction prejudicial, since the appellant Eva Moody, and Frank Newell, the driver of the car, both admitted they knew of its existence, and knew that the speed limit in Monticello was 20 miles an hour.

Finding no error prejudicial to appellant's substantial rights, the judgment in each case is affirmed.